#25617-r-JKK

**2011 S.D. 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DALE GUTHMILLER,                                        Petitioner and Appellee,

    v.

DOUGLAS WEBER, WARDEN,
SOUTH DAKOTA STATE
PENITENTIARY,                                        Respondent and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN J. DELANEY
Judge

\* \* \* \*

ARNOLD D. LAUBACH, JR.
Pennington County Public
  Defender's Office                                        Attorneys for petitioner
Rapid City, South Dakota                                and appellee.

MARTY J. JACKLEY
Attorney General

FRANK GEAGHAN
Assistant Attorney General                                Attorneys for respondent
Pierre, South Dakota                                and appellant.

\* \* \* \*

ARGUED ON MARCH 21, 2011

OPINION FILED **09/21/11**

#25617

KONENKAMP, Justice

[¶1.]    Petitioner was convicted of criminal pedophilia and sentenced to life in prison.  After this Court affirmed his conviction on direct appeal, he petitioned the circuit court for a writ of habeas corpus.  Petitioner alleged, among other things, that the trial judge made improper comments during the trial, violating his constitutional right to a fair trial.  In its first decision, the habeas court agreed that the comments were inappropriate, but concluded that petitioner failed to establish the requisite prejudice.  On reconsideration, the habeas court granted petitioner's writ.  It concluded that the trial judge's comments created a structural error negating petitioner's requirement to establish prejudice, and it also retracted its earlier ruling that trial counsel's failure to object was not prejudicial.  On appeal, we reverse because the trial judge's comments did not constitute a structural error, and despite defense counsel's failure to object to the judge's improper remarks, petitioner has not met his burden of showing that the jury's verdict would reasonably likely have been different absent trial counsel's errors.

## Background

[¶2.]    Dale Guthmiller was charged with criminal pedophilia in violation of SDCL 22-22-30.1 (now repealed).[1]  The State alleged that he committed an act of sexual penetration with R.B., a four-year-old girl.  In a part two information, he was

---

1.    At the time Guthmiller was charged, SDCL 22-22-30.1 provided that "[c]riminal pedophilia is any act of sexual penetration accomplished with a victim less than thirteen years of age by any person twenty-six years of age or older[.]"  *See State v. Guthmiller*, 2003 S.D. 83, ¶ 30 n.2, 667 N.W.2d 295, 306 n.2.

charged as a habitual offender. A jury trial was held in January 2002. During voir dire, defense counsel posed the following question to the jury: "Does anybody feel that as I said before, where there's smoke there's fire? If someone has been charged with a crime that necessarily means that, you know, he's done something?" At that point, the trial judge interjected:

> Well, Mr. Mamula, that's not right. The police in South Dakota don't just go out on the street and round people up and bring them in here, so something had to be done. The question is will you make the State prove beyond a reasonable doubt that the Defendant is guilty or not.

Defense counsel did not object or ask for a mistrial.

[¶3.] After the jury was empaneled, the State presented evidence that Guthmiller owned a motorcycle shop called "Wrench's Repair." R.B.'s mother, M.B., and Guthmiller were friends. M.B. had recently started working for Guthmiller. On July 9, 2001, she brought R.B. to work with her. R.B. liked Guthmiller. In particular, she enjoyed playing with Guthmiller's cats while her mother worked.

[¶4.] That afternoon, a customer came to the shop looking for Guthmiller. M.B. told the customer he was working back in the shop. When the customer returned a few minutes later, he said he was unable to find Guthmiller. M.B. realized R.B. was missing and began looking for her. Guthmiller later appeared with R.B. He told M.B. that he took R.B. to the bathroom. R.B. ran to her mother and asked to go home. But still having work to finish, M.B. had R.B. watch a movie.

[¶5.] M.B. testified that later that evening she noticed that R.B. was acting differently. She was "very agitated" and "did not want anyone else around." The following day, R.B. was at her grandparents' home while M.B. was working. Her

grandmother overheard R.B. say to her friend, "He won't let me play with the kittens." After the grandmother heard the statement again, she asked R.B. who she was speaking about. R.B. said she could not tell: it was a secret. R.B. said that if she told she would not be able to play with the kittens. After her grandmother urged R.B. to tell her the secret, R.B. finally disclosed that "Wrench" licked her butt. R.B. repeated that it was a secret, and if she told anyone, she would not be allowed to play with the kittens.

[¶6.] When her grandmother took R.B. home that evening, she told M.B. that R.B. had a secret, and that if she did not tell, the grandmother would. After the grandmother left, M.B. asked R.B. about the secret. R.B. said that Wrench licked her butt. R.B. also complained of pain in her "bottom," and that it "hurt to go potty." M.B. noticed that R.B.'s "vaginal area was very red." M.B. called law enforcement authorities to report R.B.'s claims.

[¶7.] Several days later, M.B. confronted Guthmiller, who broke down and cried. He said he was sorry. Guthmiller kept apologizing and asked if he could apologize to R.B. He also told M.B. that he needed help and was going to see a psychologist. He told M.B. that he did not remember the events of that day, that he could not remember what had happened, but, according to M.B., he said that if he "found out that he really did that then he deserved to go to prison the rest of his life."

[¶8.] After the trial judge found her competent, R.B. testified at trial. R.B. said that when she was with Guthmiller, he took her to the bathroom. She testified that he licked her "pee pee." Guthmiller's defense was that he did not touch R.B.

He denied apologizing to M.B. and seeking to apologize to R.B. In response to the question of why he cried when M.B. confronted him, he testified, "I started crying because any kind of felony that I get would have got me major time." Defense counsel asked Guthmiller how often he took R.B. to the bathroom that day. Guthmiller replied, "9:30, 10 o'clock in the morning; about noon, 1 o'clock and about 3:30, 4 o'clock." In all, Guthmiller had taken the child to the bathroom three times.

[¶9.]     Defense counsel then asked if anything happened during those three occasions. Guthmiller replied, "She went to the bathroom." After this statement the judge interrupted and said, "Wait a minute. Something happened but let's be a little more specific." Defense counsel did not object, seek a curative instruction, or move for a mistrial. Defense counsel then asked Guthmiller, "Did you touch or lick her in any way on any of those occasions?" Guthmiller replied, "No." Guthmiller then explained that he took R.B. to the bathroom because R.B. was standing by him with her legs crossed, "holding herself." He asked her if she had to use the restroom, and she said she did. Guthmiller testified that the first two times he took her, he opened the ladies' room door for her to go inside, and he stood outside and waited. The third time, however, the ladies' room was occupied. Guthmiller testified that he directed R.B. to use the men's room, while he stood outside the door and waited for R.B. to finish. Guthmiller explained that after R.B. finished he needed to use the men's room. According to Guthmiller, R.B. refused to wait outside the bathroom and went inside with him.

[¶10.]     The jury found Guthmiller guilty of criminal pedophilia. Thereafter, the circuit court found him to be a habitual offender as alleged in the part two

information and sentenced him to life in prison. Guthmiller appealed the jury verdict and his sentence to this Court. *See State v. Guthmiller*, 2003 S.D. 83, 667 N.W.2d 295. In his appeal, Guthmiller presented seven issues, one being that the circuit court erred in denying his motion for a new trial because the trial judge commented on R.B.'s credibility. We affirmed.

[¶11.] Guthmiller petitioned the circuit court for a writ of habeas corpus. He alleged, among other things, that the judge's prejudicial statements violated his constitutional right to a fair trial. After an evidentiary hearing, the habeas court issued a letter opinion finding that the trial judge's comments "irreparably tainted the jury." The habeas court also ruled that defense counsel's failure to object after the comments deprived Guthmiller "of the fair and impartial trial to which he is entitled." Nonetheless, the court denied habeas relief because Guthmiller failed to establish prejudice. The habeas court held that "there is no probability that any jury, tainted or not, with or without corrective instructions, would reach a different result." Thereafter, the habeas court directed the state's attorney to prepare the appropriate paperwork.

[¶12.] Over seven months passed but the state's attorney never submitted any paperwork, so the matter remained open. In May 2009, Guthmiller moved the habeas court to reconsider its previous denial of his writ. He argued that he was not required to prove prejudice because the judge's comments so affected the entire trial from beginning to end that such erroneous comments amounted to a structural error. *See Sullivan v. Louisiana,* 508 U.S. 275, 281-82, 113 S. Ct. 2078, 2082-83, 124 L. Ed. 2d 182 (1993). After a hearing, the habeas court issued findings of fact

and conclusions of law, again holding that the comments denied Guthmiller a fair trial and his right to be tried by an impartial judge. But the court now agreed with Guthmiller that he need not prove prejudice because the comments constituted a structural error. The court further found that defense counsel's failure to object constituted ineffective assistance of counsel and that the trial judge's comments were prejudicial. The court issued a writ of habeas corpus, vacated Guthmiller's conviction and sentence, and ordered a new trial. The State appeals asserting that (1) the trial judge's comments did not amount to a structural error, (2) Guthmiller was not prejudiced by the comments, and (3) defense counsel was not ineffective.[2]

## Analysis and Decision

### A. Trial Court's Improper Interjections

[¶13.]     When the trial judge interrupted defense counsel during voir dire to announce that "[t]he police in South Dakota don't just go out on the street and

---

2.     Standard of Review: Habeas corpus is not a substitute for a direct appeal. *Erickson v. Weber*, 2008 S.D. 30, ¶ 17, 748 N.W.2d 739, 744 (citations omitted).

> Habeas corpus is a collateral attack on a final judgment, and therefore our scope of review is limited. *Lodermeier v. Class*, 1996 S.D. 134, ¶ 3, 555 N.W.2d 618, 621. A habeas applicant bears the initial burden to establish a colorable claim for relief. *Jenner v. Dooley*, 1999 S.D. 20, ¶ 11, 590 N.W.2d 463, 468. Accordingly, the State has only the burden of meeting the petitioner's evidence. *Davi v. Class*, 2000 S.D. 30, ¶ 26, 609 N.W.2d 107, 114. The habeas court's factual findings are reviewed under the clearly erroneous standard, while legal conclusions are reviewed de novo. *Meinders v. Weber*, 2000 S.D. 2, ¶ 5, 604 N.W.2d 248, 252 (citations omitted).

> *Rodriguez v. Weber*, 2000 S.D. 128, ¶ 12, 617 N.W.2d 132, 138.

round people up and bring them in here, so something had to be done," the judge insinuated that Guthmiller must have done something wrong or the police would not have arrested him. This comment was clearly improper. In jury trials, judges must not weigh in on the evidence, pass on the credibility of witnesses, or otherwise give their personal impressions to the jurors.[3] Regardless of the judge's reason for the comment, it was an accusatory remark against Guthmiller.

[¶14.]    During Guthmiller's testimony, the judge made another inappropriate remark reflecting negatively on Guthmiller. Defense counsel asked if anything happened with R.B. while Guthmiller was in the bathroom, and Guthmiller replied, "She went to the bathroom." The judge interrupted and said, "Wait a minute. Something happened but let's be a little more specific." As the habeas court found

---

3.    The trial judge also interjected during the prosecutor's closing remarks. When the prosecutor repeatedly urged the jury to "do the right thing," the court admonished the jury:

> Ladies and gentlemen, the defense didn't object to it but I think I need to tell you, your job is not to do the right thing. That doesn't really have anything to do with what we're here for. Your job is if you find beyond a reasonable doubt that the State has proven what they're supposed to prove, then your job is to find the defendant guilty. If you find that they have not proven what they're supposed to have to prove [sic] or any part of it beyond a reasonable doubt, then your job is to find him not guilty. It's not doing the right or doing the wrong thing. It's just simply following the instructions of the court.

In this instance, the interjection was justified. *See State v. Musser*, 721 N.W.2d 734, 756 (Iowa 2006) (prosecutor improperly attempted to broaden the jury's duty by arguing that they should "do the right thing"); *Impson v. State*, 721 N.E.2d 1275, 1283 (Ind. Ct. App. 2000) (prosecutor's request that the jury "do the right thing" was improper to the extent that it encouraged the jury to act for reasons other than the evidence).

after its first hearing, the judge's statement "unmistakably impl[ied], or flatly announce[d] that . . . Guthmiller is not telling us [the jury] everything about what happened in the bathroom[.]" Like the statement made during defense counsel's voir dire, this comment was clearly an error, and defense counsel should have objected.

[¶15.] A trial judge's governing role in a jury trial is such that "remarks or comments [by the judge] . . . overshadow those of the litigants, witnesses and other court officers." *Hamilton v. State*, 109 So. 2d 422, 424 (Fla. Ct. App. 1959). When such comments suggest "the judge's view as to the weight of the evidence, the credibility of a witness, or the guilt of the accused, it thereby destroys the impartiality of the trial. . . ." *Id*. As one court noted, "[w]hile it is certainly true that a trial judge has the power to take such action [comment on the case] even in the absence of an objection from the opposing lawyer, it should be exceedingly rare to do so. Repeated interjections without objection can recast the judicial role from impartial adjudicator to an apparent advocate for the party foreswearing objection. The occasion authorizing such judicial action should thus be both singular and intolerably offensive." *Brown v. State*, 678 So. 2d 910, 913 (Fla. Ct. App. 1996).

### B. Structural Error

[¶16.] Having determined that the trial court's comments were improper, we must now gauge their significance. Certain structural defects so "affect[ ] the framework within which the trial proceeds" that automatic reversal is required. *Sullivan*, 508 U.S. at 282, 113 S. Ct. at 2083 (Rehnquist, J., concurring) (citation

omitted).[4] The United States Supreme Court has only found errors to be structural when there has been (1) a deprivation of the right to counsel; (2) a biased judge; (3) an unlawful exclusion of grand jurors of the defendant's race; (4) a deprivation of the right of self-representation at trial; (5) a deprivation of the right to a public trial; and (6) an erroneous reasonable doubt standard. *See Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35 (1999). When an error is structural it necessarily renders a trial fundamentally unfair. *Id.* As one court stated, "A structural error resists harmless error review completely because it taints the entire proceeding." *State v. Levy*, 132 P.3d 1076, 1083 (Wash. 2006). Yet a constitutional error is either structural or it is not. *Neder*, 527 U.S. at 14, 119 S. Ct. at 1836. Therefore, the Supreme Court has declined to follow a broader "functional equivalent test," because it would be inconsistent with the Court's categorical approach to structural errors. *Id.*

[¶17.] Here, the trial judge's improper comments do not fit within one of the six categories of structural error recognized by the Supreme Court. In fact, the habeas court did not identify one of the six circumstances as a basis for its conclusion that the errors were structural. Rather, the habeas court declared the errors structural because Guthmiller's "constitutional right to have his case heard and determined by a jury of impartial individuals free from influence or intimation by the trial court as to his guilt" was violated. Yet solely the fact that the judge

---

4. In *Brecht v. Abrahamson,* the Supreme Court expressly recognized that reviewing for structural error is permissible on federal habeas corpus. 507 U.S. 619, 629-30, 113 S. Ct. 1710, 1717-18, 123 L. Ed. 2d 353 (1993).

made inappropriate comments does not mean that the judge was biased. For a judge to have bias against a defendant, there must be evidence of "personal enmity towards the party or in favor of the adverse party to the other party's detriment." *State v. List*, 2009 S.D. 73, ¶ 9, 771 N.W.2d 644, 646-47 (citation omitted). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* ¶ 13 (citation omitted).

[¶18.] Counsel for Guthmiller asks, "How can a criminal defendant have a legitimate chance of convincing a jury nothing happened if the judge keeps telling them something happened?" In answer, we must say that while the trial judge's comments were clearly improper, and frankly, inexplicable, they must be assessed in context with the entire case and, in that light, these remarks cannot be classified as structural errors. The habeas court erred when it ruled otherwise.[5]

### C. Ineffective Assistance of Counsel

[¶19.] The habeas court also considered whether defense counsel's failure to object to the trial judge's offending comments resulted in ineffective assistance of counsel, prejudicing Guthmiller. In its first decision, the habeas court concluded that the trial judge's remarks "irreparably tainted the jury," and defense counsel's failure to object and seek curative instructions "deprived Mr. Guthmiller of the fair and impartial trial to which he is entitled." Nonetheless, the habeas court

---

5. The habeas court reviewed the trial judge's comments for harmless error. *See Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705 (1967). Harmless-error review, however, was incorrect because defense counsel did not object to the trial judge's comments.

concluded that "there is no probability that any jury, tainted or not, with or without corrective instructions, would reach a different result." The habeas court emphasized that "there is no animosity between the victim's family" and Guthmiller, "the disclosure was not made by or through the victim's mother in the first instance," and a child of that age could not "conceive of such a strategy in making up a charge." The court further determined that "[n]othing in the defense testimony even dent[ed] the prosecution case." Therefore, the court concluded that Guthmiller "has not carried his burden," and "[t]he evidence adduced is clearly sufficient to establish beyond a reasonable doubt that Mr. Guthmiller committed the crimes complained of."

[¶20.] On reconsideration, the habeas court noted that when it initially held that Guthmiller failed to establish prejudice, it had not considered *Lockhart v. Fretwell,* 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The habeas court believed that *Lockhart* stands for the proposition that prejudice is proved if "the result of the proceeding was fundamentally unfair or unreliable[.]" *See id.* at 369, 113 S. Ct. at 842. Because Guthmiller's trial was unfair, the court held that Guthmiller was prejudiced.

[¶21.] While *Lockhart* gives consideration to whether the result of the proceeding was fundamentally unfair or unreliable, the case does not create new law or overrule the prejudice prong of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Lockhart,* 506 U.S. at 373-74, 113 S. Ct. at 845 (O'Connor, J., concurring). Rather, *Lockhart* emphasizes that a focus merely on outcome can be defective because in some cases "counsel's error may grant the

defendant a windfall to which the law does not entitle him." *Id.* at 370, 113 S. Ct. at

843. Thus, in *Nix v. Whiteside*, the defendant argued that counsel was ineffective

for failing to cooperate in presenting perjured testimony. 475 U.S. 157, 175, 106 S.

Ct. 988, 998, 89 L. Ed. 2d 123 (1986). Indeed, the outcome may have been different

had the defendant given perjured testimony. And asking solely whether the

outcome would have been different but for counsel's performance would be

inadequate. That is why a court must also consider whether the result of the trial

was fundamentally unfair or unreliable.

[¶22.]        Therefore, the determinative question is still whether there is "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at

2068. As the Court in *Strickland* stated, "a court hearing an ineffectiveness claim

must consider the totality of the evidence before the judge or jury." 466 U.S. at 695,

104 S. Ct. at 2069.

> Some of the factual findings will have been unaffected by the
> errors, and factual findings that were affected will have been
> affected in different ways. Some errors will have had a
> pervasive effect on the inferences to be drawn from the evidence,
> altering the entire evidentiary picture, and some will have had
> an isolated, trivial effect. Moreover, a verdict or conclusion only
> weakly supported by the record is more likely to have been
> affected by errors than one with overwhelming record support.
> Taking the unaffected findings as a given, and taking due
> account of the effect of the errors on the remaining findings, a
> court making the prejudice inquiry must ask if the defendant
> has met the burden of showing that the decision reached would
> reasonably likely have been different absent the errors.

*Id.* at 695-96, 104 S. Ct. at 2069.

[¶23.]     Two considerations lead us to conclude that Guthmiller has not met his burden of showing that the result here would reasonably likely have been different absent defense counsel's errors.  First, as the habeas court noted, the evidence against Guthmiller was compelling.  He admitted to being alone in the bathroom with the child, he repeatedly apologized to the mother when she confronted him and offered to apologize to the child, and the child's rendition of the incident was generally consistent in its repeated retelling and with the way a child that age would describe such an event.  Moreover, the child reported the incident only reluctantly because she feared that disclosure of the "secret" would deny her access to Guthmiller's kittens.  Both the mother and the child were Guthmiller's friends, so there was no apparent motive for them to falsely accuse him.  Second, fairly mollifying the trial judge's offending remarks, he instructed the jury at the close of the case that

> [t]he the actions of the court during the trial in ruling on motions or objections by counsel or in comments to counsel or in setting forth the law in these instructions are not to be taken by you as any indication of an opinion by the court as to how you should determine the issues of fact.  What your verdict shall be is your sole and exclusive responsibility.

Based on the evidence in the record, which strongly supports the guilty verdict, Guthmiller has failed to establish that counsel's errors in failing to object to the trial judge's improper remarks resulted in the required prejudice.

[¶24.]     Reversed.

[¶25.]     GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and MEIERHENRY, Retired Justice, concur.

[¶26.] WILBUR, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.