#27351-a-SLZ

**2015 S.D. 103**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

JOSEPH ARGUELLO,                           Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFF W. DAVIS
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff
                                           and appellee.


ROBERT VAN NORMAN
Rapid City, South Dakota                   Attorney for defendant
                                           and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 30, 2015

OPINION FILED **12/30/15**

#27351

ZINTER, Justice

[¶1.] Joseph Arguello was convicted of three counts of sexual contact and rape involving three minors. Arguello appeals his conviction on the ground that the trial judge left the courtroom during the presentation of evidence. Arguello also appeals on the ground that the judge failed to give the jury a statutorily-required admonishment before recesses and adjournments. We affirm.

*Facts and Procedural History*

[¶2.] Joseph Arguello had a twenty-year, on-again, off-again relationship with R.D. During one of the periods in which they were separated, R.D. married another man and they had three children. R.D. divorced in 2007, and she reunited with Arguello in 2008. She and the children began living with Arguello. In 2012, one of the children accused Arguello of inappropriate sexual activity. Arguello was subsequently charged with numerous counts of rape and sexual contact involving all three children.

[¶3.] Circuit Court Judge Jeff Davis presided at trial. Immediately after the jury was empaneled on the first day of trial, Judge Davis gave the jury the following admonition to the jury:

> It's important that you honor your oaths as jurors. There's a statutory admonition I'm required to give you, which essentially says: You are to form or express no opinions about the case, discuss it among yourselves or allow anyone to discuss it with you until it's finally submitted to you for your determination. It's important that the testimony and the evidence come only from the witness stand and has been properly admitted for you folks to consider. Rather than say that at every recess, I'll say "Remember the admonition," and that's what I'm talking about.

-1-

The judge did not give the full admonition again during the three-day trial. At each recess or adjournment, he told the jury to "remember the recess admonition" (on one occasion he told the jury to "remember the recess admonition that I've given you in the past"). The judge also failed to give any admonition before one lunch recess.

[¶4.]    Near the end of the second day of trial, the attorneys and the judge agreed to play for the jury videos of two of the victims' forensic interviews in which they gave their accounts of what had occurred. The judge then told the jury that he had "a little mission about 4 o'clock that involve[d] the state's attorney's office on entirely unrelated matters" and that he would leave the courtroom while the jury watched the videos. The judge also told the jury that if necessary, "they'll change [the videos] and offer them separate." The judge then told the bailiff they could take a break "in between" and he would be "back around . . . ." The transcript does not reflect the time the judge actually left the courtroom and the time he returned. However, there is no dispute that the judge left the courtroom while the videos were presented to the jury and he returned to discharge the jury for the day. It appears from the transcript that both attorneys had agreed to have the videos played without the judge's presence.[1]

*Decision*

[¶5.]    Arguello appeals raising two issues. Arguello first argues that Judge Davis caused structural error, invalidating the conviction, because he left the

---

1.    Arguello's appellate counsel did not represent him at trial.

courtroom during the presentation of evidence.[2] Structural error requires reversal without a showing of prejudice. Structural errors so greatly affect the framework of the trial that they merit automatic reversal. *Guthmiller v. Weber*, 2011 S.D. 62, ¶ 16, 804 N.W.2d 400, 406 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 281-82, 113 S. Ct. 2078, 2082-83, 124 L. Ed. 2d 182 (1993)). However, structural errors occur only "in a very limited class of cases." *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35 (1999); *see also United States v. Jones*, 662 F.3d 1018, 1028 (8th Cir. 2011).

[¶6.] This Court, following *Neder*, has only recognized six types of structural error:

> (1) a deprivation of the right to counsel; (2) a biased judge; (3) an unlawful exclusion of grand jurors of the defendant's race; (4) a deprivation of the right of self-representation at trial; (5) a deprivation of the right to a public trial; and (6) an erroneous reasonable doubt standard.

*Guthmiller*, 2011 S.D. 62, ¶ 16, 804 N.W.2d at 406 (citing *Neder*, 527 U.S. at 8, 119 S. Ct. at 1833); *State v. Hayes*, 2014 S.D. 72, ¶ 17, 855 N.W.2d 668, 674-75. We have also followed the Supreme Court in rejecting any sort of "functional equivalent[s]." *Guthmiller*, 2011 S.D. 62, ¶ 16, 804 N.W.2d at 406 (citing *Neder*, 527 U.S. at 8, 119 S. Ct. at 1833). Therefore, we have declined to find an error structural unless it fits within one of the six categories. *See id.* ("Here, the trial judge's improper comments do not fit within one of the six categories of structural error recognized by the Supreme Court.").

---

2.      Arguello argues that the judge's leaving the courtroom violated Arguello's constitutional rights. We review alleged violations of constitutional rights de novo. *State v. Ball*, 2004 S.D. 9, ¶ 21, 675 N.W.2d 192, 199.

[¶7.]        This case is like *Guthmiller*. The judge erred in leaving the courtroom during the presentation of evidence, but the error is not one of the six recognized structural errors. *See Guthmiller*, 2011 S.D. 62, ¶ 18, 804 N.W.2d at 407. Arguello recognizes the *Guthmiller* categorical framework. Therefore, he argues that the judge's leaving the courtroom violated some of the constitutional rights recognized in the six categories; i.e. the rights to counsel, due process, and a public trial. But there is no evidence even suggesting that the judge's absence violated any one those constitutional rights. There is certainly no evidence suggesting a constitutional violation so egregious as to "necessarily render[] [the] trial fundamentally unfair." *See id.* at ¶ 16. Because the error in this case does not fit the categorical framework, we conclude that no structural error occurred.

[¶8.]        This conclusion is supported by our pre-*Neder* cases disapproving judges' leaving the courtroom during trials. Although we have consistently disapproved this conduct, we have not reversed without a showing of prejudice. In *O'Connor v. Bonney*, 57 S.D. 134, 231 N.W. 521, 524 (1930), the judge and court reporter left the courtroom during closing arguments. We "emphatically disapproved" the judge's departure but affirmed the judgment, indicating that the judge's absence alone was insufficient to reverse. *O'Conner*, 231 N.W. at 524 ("We do not say that what is claimed to have taken place during the absence of the judge and reporter in this case would alone be sufficient cause for reversal, but such practice is emphatically disapproved."). In *Poe v. Arch*, 26 S.D. 291, 128 N.W. 166, 168 (1910), a trial judge briefly left the courtroom when a party fainted and was carried to an adjoining room, but defense counsel continued with his argument. We

again upheld the jury verdict because there was no prejudice to the defendant. *Id.*

("The evidence in this case fully justified the verdict, and no prejudice to defendant

appears. Having carefully considered all the assignments of error, we are of the

opinion that no reversible error exists."). Many other state and federal cases

support the conclusion that a trial judge's absence is improper, but it is not

structural error.[3]

[¶9.]    Because there was no structural error, Arguello must establish

prejudice. Arguello argues that he was prejudiced because the judge's absence

---

3.    *See United States v. Love*, 134 F.3d 595, 604-05 (4th Cir. 1998) (rejecting the defendant's argument that the judge's temporary absence was structural error, requiring a showing of prejudice to justify reversal); *Heflin v. United States*, 125 F.2d 700, 701 (5th Cir. 1942) (holding that a judge's absence for a few minutes during closing argument did not result in prejudice and was thus not reversible error); *People v. Garcia*, 826 P.2d 1259, 1266 (Colo. 1992) (holding that although the judge erred in leaving during the playing of a video during trial, defendant's failure to object waived the error); *Sherman v. Marden*, 525 N.W.2d 550, 553 (Minn. Ct. App. 1994) ("While it is true that a judge who, with or without objection, leaves the courtroom while court continues in session demonstrates poor judgment, here the judge's absence was not so egregiously prejudicial as to deny Sherman a fair trial."); *State v. Scott*, 824 N.W.2d 668, 687 (Neb. 2012) ("Although we disapprove of the judge's practice, we conclude that Scott did not establish prejudice resulting from the judge's absences and that the district court did not err when it overruled the motion for new trial on this basis."); *Coddington v. State*, 254 P.3d 684 (Okla. 2011) (holding that a judge's absence does not automatically create structural error).

We recognize that other cases have concluded that a judge's absence from the courtroom can be structural error. *See, e.g.*, *United States v. Mortimer*, 161 F.3d 240, 242 (3d Cir. 1998) (finding structural error when the judge vanished during closing statements, without consent or knowledge of either party); *Riley v. Deeds*, 56 F.3d 1117, 1119 (9th Cir. 1995) (holding that a judge's absence was structural error when the judge did not present himself to have testimony read back, leaving the task to his law clerk); *People v. Vargas*, 673 N.E.2d 1037, 1038 (Ill. 1996) (holding that a judge's absence during a felony trial is per se reversible error). However, *Neder* was decided after these cases, and South Dakota applies the *Neder* categorical approach.

prevented a fair consideration of his motion for judgment of acquittal. Arguello contends that because the judge was not present to observe the victims' accounts of the alleged sexual misconduct, the judge could not have properly considered Arguello's challenge to the sufficiency of the evidence.

[¶10.]     The record is unclear whether the judge ever watched the videos. At an earlier motion hearing, the parties indicated that the judge should watch the videos at his convenience because they were the subject of a pretrial motion. The judge indicated at the end of that hearing that he would "get the videos watched." But there is no indication in the record—from a decision of the court or otherwise— whether the judge actually viewed the videos. However, even if we assume the judge did not watch the videos, Arguello cannot establish prejudice. "We review de novo a trial court's denial of a motion for a judgment of acquittal and decide anew whether there is sufficient evidence in the record to sustain the conviction." *State v. Miland*, 2014 S.D. 98, ¶ 11, 858 N.W.2d 328, 331. Notwithstanding our de novo standard of review, Arguello does not challenge the sufficiency of the evidence on appeal. Therefore, the sufficiency of the evidence to support the State's case stands unchallenged. Because Arguello has not established prejudice, we reject his challenge to his conviction on this ground.

[¶11.]     We do, however, reiterate that it is improper to leave the courtroom during a trial. "The presiding judge is an integral part of the trial court, and ought not to be absent for any period while the trial is proceeding." *O'Conner*, 231 N.W. at 524. "It will thus be seen that the judge is an essential constituent of a court, and that there can be no court in the absence of the judge or judges." *State v. Jackson*,

21 S.D. 494, 113 N.W. 880, 881 (1907). Moreover, a judge's absence can have a significant effect on the jury. Jurors are mindful of a judge's behavior during trial—every word the judge says and every action the judge takes is received with deference. *People v. Vargas*, 673 N.E.2d 1037, 1042 (Ill. 1996). Therefore, a "judge's absence from the bench during the course of the trial may create a negative impression in the minds of the jury to the detriment of the defendant." *Id.* (quoting *People v. Marino*, 111 N.E.2d 534 (Ill. 1953)). We also believe that a judge's absence may cause the jury to believe the matters in court are not important enough to merit attention. We adopt the Massachusetts Supreme Court's view that:

> The very act of a judge's presiding over the trial has a profound and sobering influence on all those who are present in the courtroom. "[T]he core of our constitutional system is that individual liberty must never be taken away by shortcuts. . . ."

*Commonwealth v. Bergstrom*, 524 N.E.2d 366, 377 (Mass. 1988) (quoting *Jay v. Boyd*, 351 U.S. 345, 369-70, 76 S. Ct. 919, 933, 100 L. Ed. 2d 1242 (1956) (Black, J., dissenting)).

[¶12.]     Arguello also argues that we should reverse his conviction because Judge Davis failed to fully and regularly admonish the jury at each recess and adjournment.[4] SDCL 23A-24-5 requires that the following admonition be given to jurors at each adjournment of court.

> Jurors shall, at each adjournment of court, whether permitted to separate or kept in charge of officers, be admonished by the court as follows: You are reminded that you are not to discuss any aspect of this case among yourselves or with anyone else

---

4.     Jury admonitions involve courtroom procedure. We review a trial judge's alleged violation of courtroom procedures for an abuse of discretion. *State v. Selalla*, 2008 S.D. 3, ¶ 18, 744 N.W.2d 802, 807.

> and that you should not form or express any opinion on the case until it is given to you for decision.

*Id.* Substantial compliance with this requirement is sufficient. *State v. Brim*, 2010 S.D. 74, ¶ 14, 789 N.W.2d 80, 85 (holding that the judge substantially complied with the statute at each and every recess and adjournment). *See also State v. Iron Necklace*, 430 N.W.2d 66, 78 (S.D. 1988) (holding that failing to specifically admonish one jury alternate at the beginning of trial was not grounds for a mistrial, when the judge carefully followed the statutory mandate at every other adjournment). Substantial compliance means "actual compliance with respect to the substance essential to every reasonable objective of the statute." *R.B.O. v. Congregation of Priests of Sacred Heart,* Inc., 2011 S.D. 87, ¶ 12, 806 N.W.2d 907, 911-12 (quoting *Wagner v. Truesdell*, 1998 S.D. 9, ¶ 9, 574 N.W.2d 627, 629). Substantial compliance cannot be shown unless the purpose of the statute has been served. *Id.*

[¶13.] Arguello contends that the judge did not substantially comply with the statutory mandate. We agree. On the first day of trial, immediately after the jury had been empaneled, the judge's first admonition substantially complied with the statute. However, he never gave a complete admonishment again in a three-day trial. Instead, at each adjournment or recess, he merely told the jury to "remember the admonition." Additionally, the judge gave no admonishment before the lunch recess on the second day of trial.

[¶14.] The purpose of the admonishment is to prevent juror misconduct. More specifically, its purpose is to dissuade jurors from forming or expressing any opinion about the case until all of the evidence has been presented. The

admonishment is also intended to dissuade jurors from talking about the case with anyone, including each other, until the case has finally been submitted for their consideration. In a three-day trial, these purposes are not fulfilled by only one full admonishment given before the presentation of evidence has started. It is too much to expect that jurors can remember the full admonition one, two, and three days after it is first given. To be effective, is also important to emphasize the admonition when the evidence is being heard—the time when jurors are most likely to forget to keep an open mind until they hear all of the evidence. Additionally, the admonition must be repeated to dissuade the jurors from communicating among themselves and with others. The stakes are too high in today's environment of smartphones, the internet, and social media to not repeat the full admonition. We are not suggesting that substantial compliance cannot be found without parroting the statute at every break. But the purpose of the admonishment is to prevent juror misconduct, and only one complete admonishment at the end of jury selection is not sufficient to satisfy that purpose. We conclude that the admonishments given in this case did not substantially comply with the statute.

[¶15.]     The question then, is what is the remedy for the failure to substantially comply with the statute? Arguello argues that reversal is required because if we condone what occurred, SDCL 23A-24-5 will become a nullity. Arguello is correct to the extent that we cannot condone the admonitions given in this case. However, our cases have established that reversal is not warranted where there is no indication that the failure to properly admonish resulted in prejudice. *See Brim*, 2010 S.D. 74, ¶ 13, 789 N.W.2d at 85 ("The trial court's failure

to admonish the first panel of venire persons does not constitute reversible error as there is no indication that the failure to do so affected the verdict in this case."). *See also Iron Necklace*, 430 N.W.2d at 78 (concluding that a minor omission did not affect the verdict); *State v. Lang*, 354 N.W.2d 723, 725 (S.D. 1984) (same).

[¶16.]     A prejudice requirement is warranted because the admonition is a prophylactic protection against juror misconduct, but if the harm the statute is intended to prevent never occurs, reversal to have the admonition given would be pointless. *See United States v. Nelson*, 102 F.3d 1344, 1348 (4th Cir. 1996) (holding a judge's complete failure to admonish jury was not fundamental error meriting automatic reversal where the party failed to object and no prejudice or harm was shown);[5] *See also State v. Lopes*, 826 A.2d 1238, 1252-53 (Conn. App. Ct. 2003) (holding that the defendant was not entitled to reversal without a showing of prejudice, even though the judge did not comply with the terms of the statute); *People v. Small*, 2 A.D.2d 935, 935, (N.Y. App. Div. 1956) *aff'd*, 143 N.E.2d 512 (N.Y. 1957) (holding that it was error for a judge to not admonish the jury at all on any subject until the case was submitted, but it was not reversible error without a

---

5.     *Nelson* acknowledged *United States v. Williams*, 635 F.2d 744, 745 (8th Cir. 1980), where no showing of prejudice was required to warrant reversal. *Nelson* noted that *Williams* was decided before *United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). In *Olano,* the Supreme Court noted that reversal would be pointless in a case where no harm resulted from an alternate juror sitting in on deliberations. *Olano*, 507 U.S. at 738, 113 S. Ct. at 1780. Because *Olano* held that reversal for that error would be pointless where the harm sought to be prevented never occurred, *Nelson* declined to follow *Williams*. We are persuaded by the reasoning in *Nelson*.

showing of prejudice).  Because Arguello concedes that he cannot show prejudice as a result of this error, we deny his challenge to his conviction on this ground.

[¶17.]    Affirmed.

[¶18.]    GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.