#28287-a-GAS
**2018 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CHRIS ALLEN MILLER,                              Petitioner and Appellant,

    v.

DARIN YOUNG, WARDEN,
S.D. STATE PENITENTIARY,                          Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BON HOMME COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHERYLE W. GERING
Judge

* * * *

JASON RAVNSBORG of
Harmelink, Fox & Ravnsborg
 Law Office
Yankton, South Dakota                             Attorneys for petitioner and
                                                  appellant.


MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Pierre, South Dakota                              Attorneys for respondent
                                                  and appellee.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2018
OPINION FILED **04/18/18**

#28287

SEVERSON, Justice

[¶1.]     In this habeas appeal, defendant asserts that the circuit court's errors in the jury selection process are structural rather than procedural and warrant a new trial. Defendant also claims that his counsel was ineffective at trial and on direct appeal regarding the errors in the jury selection process. We affirm.

## Background

[¶2.]     On January 30, 2013, a jury found Chris Miller guilty of the second-degree murder and aggravated assault of his four-month-old son. We affirmed Miller's convictions in *State v. Miller*, 2014 S.D. 49, 851 N.W.2d 703. In November 2014, Miller filed a petition for a writ of habeas corpus asserting multiple errors from the underlying case. This appeal concerns Miller's claim that structural errors occurred during the jury selection process. In Miller's view, the jury selection process was so fundamentally flawed that it affected the framework within which the trial proceeded, necessitating a new trial.

[¶3.]     The record reveals that jury selection occurred over the course of two days. The circuit court informed the parties that there would be 12 jurors and 3 alternates. The court also gave each side 22 peremptory strikes. To achieve these numbers, the court determined that there needed to be 59 qualified jurors after voir dire and prior to the strike-down (12 jurors plus 3 alternates plus 44 peremptory strikes equals 59). The court planned to call 200 potential jurors. The potential jurors were assigned a number and divided into four groups, which groups were to be called in four different panels.

-1-

[¶4.] On January 17, 2013, the first morning of jury selection, 31 potential jurors appeared. After voir dire, 6 jurors were excused for cause, leaving 25 qualified jurors on the clerk's final juror list. During the afternoon, 39 potential jurors appeared. After voir dire, 10 jurors were excused for cause, leaving 29 qualified jurors on the clerk's final juror list. With 54 qualified jurors after the first day of jury selection, the court noted that 5 more jurors needed to be qualified during the second day to reach the required 59 qualified jurors.

[¶5.] On January 18, the second morning of jury selection, 45 jurors appeared, including juror #108. Juror #108 had been scheduled to appear on the first afternoon of jury selection but did not appear. The record does not indicate why he was absent. After voir dire on the second day, 18 jurors were excused for cause, leaving 27 potential jurors. Because only 5 qualified jurors were needed, the circuit court drew a line on the clerk's final juror list intending to designate 59 jurors qualified for selection. The court mistakenly drew the line after the 60th qualified name on the list instead of after the 59th name. Neither the parties nor the circuit court were aware of the mistake when it happened.

[¶6.] After designating the jurors qualified for selection, the circuit judge gave the State the final juror list and left the courtroom. The parties alternated exercising peremptory strikes, with the State exercising its first strike on the 60th name on the list (juror #117). After both sides used their 22 peremptory strikes, they realized that 16 potential jurors remained, rather than 15 (12 jurors and 3 alternates). The parties brought the error to the circuit court's attention. The court realized that the 60th name on the list (juror #117) should not have been

included because the court intended to include only 59 names on the list. Based on statements made by counsel for the State, the circuit court determined that if the error had not occurred, the State would have stricken juror #108. The court, therefore, suggested that juror #108 be stricken. Miller objected but did not propose a substitute resolution. Ultimately, the court declared the State's first peremptory strike (juror #117) "invalid" and struck juror #108.

[¶7.] Miller's case proceeded to trial, and the jury found Miller guilty of both offenses. The court sentenced Miller to life in prison for the murder conviction and fifty years in prison for the conviction of aggravated assault, with the sentences to be served consecutively. Although Miller appealed, he did not challenge the jury selection process. He, however, asserted to the habeas court that appellate counsel was ineffective on direct appeal for failing to challenge the jury selection process.

[¶8.] After a hearing on Miller's petition for a writ of habeas corpus, the habeas court issued 145 findings of fact and 157 conclusions of law. The court recognized that the circuit court had unilaterally decided to give each side 22 rather than 20 peremptory challenges without a motion by either party as required by SDCL 23A-20-23. The habeas court further noted that the circuit court's use of a hybrid-juror-selection process "resulted in more jurors than necessary being passed for cause" on January 18. The habeas court held that the circuit court's decision to "remove another juror [(juror #108)] that was selected by the State, after all other peremptory challenges had been used by both parties, violated SDCL § 23A-20-25 as the trial court effectively granted the State an additional peremptory challenge."

[¶9.] After identifying the circuit court's errors, the habeas court examined whether the errors were structural. In the habeas court's view, errors involving the use of peremptory strikes "have historically been subject to a harmless error analysis in the United States Supreme Court and other state courts." The court distinguished *State v. Blem*, 2000 S.D. 69, 610 N.W.2d 803, and concluded that *Blem* "applies to jury selection errors that involve the defendant's right to have jurors subject to voir dire." Because "Miller does not and cannot contend that he and his counsel did not or were not allowed to question all prospective jurors," and because all prospective jurors were passed for cause, the habeas court concluded that the fairness and impartiality of the jury was not called into question by the circuit court's errors. The habeas court, therefore, held that the errors in the jury selection process were not structural.

[¶10.] The habeas court then reviewed whether the procedural errors were harmless. The court reiterated that all the jurors were questioned and passed for cause. The court again identified the circuit court's errors:

a. The trial court ordered an additional 4 peremptory challenges (2 to each side) in violation of SDCL § 23A-20-20, without a motion or good cause showing as required by SDCL § 23A-20-23.

b. By striking Juror 108, the trial court effectively allowed the State to have an additional peremptory challenge after all peremptory challenges had been waived or exercised by the parties in violation of SDCL § 23A-20-20, without a motion or good cause showing as required by SDCL § 23A-20-23.

The habeas court concluded that even though the circuit court granted each side 22 rather than 20 peremptory strikes, Miller did not prove prejudice because he had been tried by an impartial jury. The court likewise held that Miller failed to prove

that counsel was ineffective when counsel failed to object to the additional peremptory strikes or to the court's use of the hybrid-jury-selection process. The habeas court "noted that the trial court was not present during the peremptory challenge strike-down process." The court then correctly observed that the judge "should have been present during the exercise of the peremptory challenges," citing *State v. Arguello*, 2015 S.D. 103, ¶ 11, 873 N.W.2d 490, 495. Although the jurors were not present, "there are *Batson* issues and other matters that can arise during the exercise of peremptory challenges by the parties that the court should be present to observe." Nevertheless, although the judge should have been present, the habeas court found that Miller failed to prove prejudice from the circuit judge's absence.

[¶11.] The habeas court quashed the provisional writ but granted Miller a certificate of probable cause on the issue of jury selection. On appeal, Miller asserts:

1. The errors in the jury selection process warrant a new trial.

2. Counsel was ineffective at trial and during Miller's direct appeal for failing to challenge the jury selection process.

## Standard of Review

[¶12.] "Our review of habeas corpus proceedings is limited because it 'is a collateral attack on a final judgment.'" *Vanden Hoek v. Weber*, 2006 S.D. 102, ¶ 8, 724 N.W.2d 858, 861 (quoting *Crutchfield v. Weber*, 2005 S.D. 62, ¶ 8, 697 N.W.2d 756, 759). "Accordingly, 'habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the

sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.'" *Oleson v. Young*, 2015 S.D. 73, ¶ 5, 869 N.W.2d 452, 455 (quoting *McDonough v. Weber*, 2015 S.D. 1, ¶ 15, 859 N.W.2d 26, 34). "Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact." *Baldridge v. Weber*, 2008 S.D. 14, ¶ 21, 746 N.W.2d 12, 17 (quoting *Rodriguez v. Weber*, 2000 S.D. 128, ¶ 28, 617 N.W.2d 132, 142).

## Analysis

### 1. Jury Selection Process

[¶13.] Miller avers that the errors in the jury selection process affected the framework within which his trial proceeded and thereby constituted structural errors. The errors Miller specifically challenges on appeal include: (1) the circuit court did not follow SDCL 23A-20-20 (Rule 24 (b)) when it gave each side 22 peremptory challenges; (2) the court presented a list of 60 potential jurors instead of 59, thereby causing an extra juror to remain on the final list of qualified jurors; and (3) the circuit court gave the State an extra peremptory challenge.

[¶14.] Miller is correct that a structural error "necessarily renders a trial fundamentally unfair." *Guthmiller v. Weber*, 2011 S.D. 62, ¶ 16, 804 N.W.2d 400, 406. Thus, as we recognized in *Guthmiller*, "[a] structural error resists harmless error review completely because it taints the entire proceeding." *Id.* (quoting *State v. Levy*, 132 P.3d 1076, 1083 (Wash. 2006)); *accord Arguello*, 2015 S.D. 103, ¶ 5, 873 N.W.2d at 493. "Yet a constitutional error is either structural or it is not." *Guthmiller*, 2011 S.D. 62, ¶ 16, 804 N.W.2d at 406. This categorical approach is

applied by this Court and the United States Supreme Court and specifically excludes functional equivalents. *Id.* (citing *Neder v. United States*, 527 U.S. 1, 14, 119 S. Ct. 1827, 1836, 144 L. Ed. 2d 35 (1999)); *accord Arguello*, 2015 S.D. 103, ¶ 6, 873 N.W.2d at 493. Following *Neder*, we have recognized six types of structural error. They include: "(1) a deprivation of the right to counsel; (2) a biased judge; (3) an unlawful exclusion of grand jurors of the defendant's race; (4) a deprivation of the right of self-representation at trial; (5) a deprivation of the right to a public trial; and (6) an erroneous reasonable doubt standard." *Arguello*, 2015 S.D. 103, ¶ 6, 873 N.W.2d at 493 (quoting *Guthmiller*, 2011 S.D. 62, ¶ 16, 804 N.W.2d at 406).

[¶15.]     Miller concedes that this case does not concern one of the six recognized structural errors. Rather, he relies on *Blem*, in which we held that "a substantial failure to comply with jury selection statutes is a structural error[.]" 2000 S.D. 69, ¶ 29, 610 N.W.2d at 810. In *Blem*, the State sent a letter to the circuit court prior to voir dire asking the court to remove two potential jurors for cause. Counsel for Blem opposed the State's request. After a hearing, the circuit court granted the State's request. On appeal, Blem asserted that the circuit court's violation of the statutory jury selection process denied him the "opportunity to determine that these prospective jurors were not biased and should not be removed for cause." *Id.* ¶ 20. Blem further asserted that the court's error was structural.

[¶16.]     We agreed that the court erred and that the error was structural, relying on *State v. LaMere*, 2 P.3d 204 (Mont. 2000). In *LaMere*, the Montana Supreme Court held that "a material failure to substantially comply with Montana's statutes governing the procurement of a jury trial" require automatic reversal. *Id.*

at 217. In *Blem*, we were "persuaded by the *LaMere* rationale[.]" 2000 S.D. 69, ¶ 29, 610 N.W.2d at 810. We determined "that the South Dakota statutory procedures 'establish objective methods for the random selection of trial jurors' in South Dakota. 'These objective procedures, by seeking to eliminate as far as possible the vagaries of human subjectivity and arbitrariness from the jury selection process, secure a defendant's fundamental right to an impartial jury[.]'" *Id.* (quoting *LaMere*, 2 P.3d at 214). "[B]ecause no examination of the prospective jurors was conducted prior to their removal," we held that "there was a substantial failure to comply with jury selection statutes[.]" *Id.* ¶ 30. We further considered that "Blem was denied an opportunity to demonstrate that neither of these jurors were biased nor prejudiced" and that "[n]either side, including the State, is entitled to the exclusion of particular jurors prior to the commencement of the voir dire process." *Id.*

[¶17.] Here, in contrast, the circuit court's errors did not deny Miller the opportunity to demonstrate that the jurors were biased. The errors did not negate the "objective procedures" that "secure a defendant's fundamental right to an impartial jury[.]" *LaMere*, 2 P.3d at 213. Although the circuit court ordered too many peremptory challenges, every juror on the juror list had been questioned and passed for cause. Thus, unlike *Blem* and *LaMere*, Miller and the State questioned the prospective jurors and the parties were able to "eliminate as far as possible the vagaries of human subjectivity and arbitrariness from the jury selection process[.]" *LaMere*, 2 P.3d at 214.

[¶18.]     We likewise conclude that the circuit court's decision to strike juror #108, which in effect gave the State an extra peremptory strike, did not constitute a structural error. Long ago, this Court held that the circuit court's decision to grant the State an additional peremptory challenge after all challenges had been exercised was subject to harmless error analysis. *State v. Sitts*, 71 S.D. 494, 503, 26 N.W.2d 187, 191 (1947). Although the statute in effect at the time of *Sitts* was different, this Court recognized that the error related to the exercise of peremptory challenges was harmless because "the qualified juror who was discharged was replaced by another juror possessing the same qualifications[.]" *Id.* In *State v. Violett*, we also concluded that the circuit court's excusal of a juror in violation of a juror statute constituted only a procedural error. 79 S.D. 292, 304, 111 N.W.2d 598, 605 (1961), *overruled on other grounds by State v. Waff*, 373 N.W.2d 18 (S.D. 1985).

[¶19.]     Although *Blem* is a more recent decision and identified that a structural error can occur in the jury selection process, *Blem* does not stand for the proposition that every error in the jury selection process constitutes a structural error. As the Montana Supreme Court recognized after *LaMere*, "[t]echnical departures from the jury selection statutes and violations which do not threaten the goals of random selection and objective disqualification do not constitute a substantial failure to comply." *State v. Bearchild*, 103 P.3d 1006, 1009 (Mont. 2004). We further note that the United States Supreme Court has held that "the mistaken denial of a state-provided peremptory challenge does not" as a matter of federal law "necessarily render[ ] a criminal trial fundamentally unfair" or render it "an unreliable vehicle for determining guilt or innocence." *Rivera v. Illinois*, 556

U.S. 148, 158, 160, 129 S. Ct. 1446, 1454-55, 173 L. Ed. 2d 320 (2009) (quoting *Washington v. Recuenco*, 548 U.S. 212, 218-19, 126 S. Ct. 2546, 2551 (2006)).  In the United States Supreme Court's view, "States are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error *per se*."  *Id.* at 162, 129 S. Ct. at 1456.  Or states may conclude "that the improper seating of a competent and unbiased juror does not convert the jury into an ultra vires tribunal; therefore the error could rank as harmless under state law." *Id.*

[¶20.]     Because, here, the circuit court's errors did not "threaten the goals of random selection and objective disqualification," *see Bearchild*, 103 P.3d at 439, we hold that there was not "a material failure to substantially comply with [our] statutes governing the procurement of a trial jury," *see Blem*, 2000 S.D. 69, ¶ 28, 610 N.W.2d at 810 (quoting *LaMere*, 2 P.3d at 217).  Indeed, the court's errors did "not convert the jury into an ultra vires tribunal[.]"  *Rivera*, 556 U.S. at 162, 129 S. Ct. at 1456.  "[T]herefore the error could rank as harmless under" South Dakota law. *See id.*

[¶21.]     Because the errors are not structural, we determine whether the circuit court's errors were harmless.  *See Arguello*, 2015 S.D. 103, ¶ 9, 873 N.W.2d at 494.  Under harmless error review, reversal is not required if we can "declare a belief beyond a reasonable doubt that the error[s were] harmless and did not contribute to the verdict obtained."  *State v. Berget*, 2013 S.D. 1, ¶ 116, 826 N.W.2d 1, 36 (quoting *State v. Younger*, 453 N.W.2d 834, 838 (S.D. 1990)); *accord State v. Rogers*, 2016 S.D. 83, ¶ 18, 887 N.W.2d 720, 725.  According to Miller, the court's

errors were not harmless because the errors rendered it impossible to determine whether the same jurors would have been stricken by either the State or defense had the circuit court used the proper process. Miller further claims that the court's errors made it impossible to determine whether the jury may have been composed of different people.

[¶22.] Yet in *State v. Daniel*, we recognized that "[i]t is not error alone that reverses judgments of convictions of crime in this state but error plus injury." 2000 S.D. 18, ¶ 17, 606 N.W.2d 532, 535 (citing SDCL 23A-44-14). Likewise, in *Arguello*, we recognized that absent prejudice, a failure to comply with the statute requiring admonition of the jury did not require reversal. 2015 S.D. 103, ¶ 15, 873 N.W.2d at 496 (examining the circuit court's failure to substantially comply with SDCL 23A-24-5). Here, it is undisputed that Miller was tried before a qualified jury composed of individuals not challenged for cause. Moreover, the circuit court's decision to grant 22 peremptory strikes to each side, its decision to give the State an extra peremptory challenge, and its mistaken inclusion of 60 jurors on the clerk's final juror list did not deprive Miller of his constitutional right to a fair trial before an impartial jury.

[¶23.] As the United States Supreme Court has explained, "[a] principal reason for peremptories" is "to help secure the constitutional guarantee of a trial by an impartial jury." *Rivera*, 556 U.S. at 159, 129 S. Ct. at 1454 (quoting *United States v. Martinez-Salazar*, 528 U.S. 304, 316, 120 S. Ct. 774, 782, 145 L. Ed. 2d 792 (2000)). Because Miller has failed to establish that the twelve jurors who heard the

evidence and rendered the verdict were not impartial, the circuit court's errors were harmless.

### 2. Ineffective Assistance of Counsel

[¶24.] Miller asserts that his trial counsel's performance was deficient because counsel did not object to the circuit court's decision to grant each side 22 peremptory challenges. He further claims that trial counsel was deficient when counsel failed to object to the presence of 60 jurors on the list instead of 59. Although counsel did object when the circuit court gave the State an extra peremptory strike, Miller claims counsel was deficient because "counsel did not offer any solutions." These deficiencies, according to Miller, prejudiced him because they undermined the integrity of the entire trial. He further claims that appellate counsel was deficient on direct appeal for failing to challenge the jury selection process. In Miller's view, "[c]learly, these actions are not the actions of an effective legal counsel."

[¶25.] "This Court has stated that defendants 'shoulder a heavy burden of proof in their ineffective assistance of counsel claims.'" *Crutchfield*, 2005 S.D. 62, ¶ 11, 697 N.W.2d at 759 (quoting *Coon v. Weber*, 2002 S.D. 48, ¶ 11, 644 N.W.2d 638, 642). The defendant must prove that "counsel's representation fell below an objective standard of reasonableness" and "that such deficiency prejudiced the defendant." *Rhines v. Weber*, 2000 S.D. 19, ¶ 13, 608 N.W.2d 303, 307. We presume lawyers are "competent unless otherwise shown and the reasonableness of counsel's performance is evaluated from counsel's perspective at the time in light of all of the circumstances." *Coon*, 2002 S.D. 48, ¶ 11, 644 N.W.2d at 642. "The benchmark for

judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984).

[¶26.]	Miller has not met the heavy burden of proof on his claim of ineffective assistance of counsel. In particular, Miller has not directed this Court to evidence that the failure to object or the failure to raise issues on direct appeal fell below an objective standard of reasonableness. Rather, he relies on his view that the errors in the jury selection process were structural, and he, thus, claims that counsel's deficiencies undermined the integrity of the entire trial. Because Miller has not overcome the "strong presumption that counsel's performance falls within the wide range of professional assistance," Miller has not shown that he received ineffective assistance of counsel. *See Steichen v. Weber*, 2009 S.D. 4, ¶ 25, 760 N.W.2d 381, 392 (quoting *Denoyer v. Weber*, 2005 S.D. 43, ¶ 19, 694 N.W.2d 848, 855).

[¶27.]	Affirmed.

[¶28.]	GILBERTSON, Chief Justice, and ZINTER, KERN, and JENSEN, Justices, concur.