#24972-a-PER CURIAM

**2009 SD 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

DENNIS CHARLES LIST,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GLEN W. ENG
Judge

* * * *

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General                    Attorneys for plaintiff
Pierre, South Dakota                    and appellee.

DOUGLAS R. KETTERING                    Attorney for defendant
Yankton, South Dakota                    and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 23, 2009

OPINION FILED 8/12/09

#24972

PER CURIAM

[¶1.]     Dennis List appeals his conviction for accessory to possession of a controlled substance.  We affirm.

FACTS

[¶2.]     List, a sixty-year-old resident of Yankton, South Dakota, was romantically involved for a time with a twenty-seven-year-old woman named Sara Auch.  Auch had a history of mental illness and substance abuse and was placed on probation for a forgery offense in 2005.  Auch used methamphetamine and methadone during her probation, which exacerbated her mental health problems and resulted in her placement at a treatment center and halfway house in Watertown, South Dakota.  Auch was eventually transferred back to custody in Yankton and, in 2006, her probation was revoked and she was sentenced to three years in the Women's Penitentiary.  Auch was on parole in January 2008, when she was taken into custody as a result of a domestic disturbance.  Her urinalysis tested positive for the presence of methamphetamine.  Because of her behavior while in custody, Auch was transferred to the Human Services Center for a mental health evaluation.  On January 23, 2008, List visited Auch at the Human Services Center and was caught by staff in the act of providing Auch with several methadone tablets.  The incident was reported to the authorities and a prosecution was commenced against List.

[¶3.]     List was initially charged by complaint with one count of distribution of a controlled substance.  Plea bargaining ensued and he ultimately pleaded guilty to one count of accessory to possession of a controlled substance.

[¶4.]	Following List's entry of his plea, a presentence investigation was conducted. The report informed the court of Auch's parole revocation and the difficulties she had experienced with substance abuse while on probation and parole. The report further disclosed Auch's allegations that List provided her with oxycontin and methadone and used methamphetamine with her for years in return for sexual favors. Auch specifically named List as the person who provided her with numerous methadone tablets during her stay at the treatment center in Watertown.

[¶5.]	List was sentenced on July 15, 2008. Pursuant to the plea bargain, the State recommended a suspended imposition of sentence and a period of three years of probation along with a $1,000 fine. The State also recommended an extended period of house arrest. List addressed the court during sentencing and expressed remorse for his offense and the embarrassment it had caused his family. Before imposing sentence, the court made the following comments that are the genesis of this appeal:

> . . . The court many times is presented with cases and the court only peripherally knows victims.
>
> In this case, the victim, Sara Auch, the court knows very well because the court dealt with her on numerous occasions.
>
> We attempted to guide her through recovery at many different levels, many different kinds of institutions and she had a very difficult time.
>
> She has not just addiction issues, but also mental health issues that have to be dealt with and, so, she is a person who this court worked with over a long period of time, and ultimately this court revoked her sentence and sentenced her to three years in the pen[itentiary] because she could not comply with what this court required.

> Now, the reason I bring that up is because I think that you contributed to her failure. You contributed to her inability to stay sober because you provided her with the drugs that allowed her to continue her addiction and also to avoid the compliance with this court's order.

The court went on to state:

> . . . I abhor people who take advantage of the disadvantaged.
>
> I think you [preyed] upon Ms. Auch knowing that she had these issues. Now, whether you loved her or not, I don't know, but providing a person with the ability to continue an addiction is not my view of any love.

[¶6.] Following these remarks and some additional comments, the court sentenced List to three years in the penitentiary and a fine of $1,000 plus costs and restitution. List appeals, arguing that the trial court's comments at sentencing demonstrate bias and prejudice, depriving him of due of process of law.

## DECISION

[¶7.] We recently examined the issue of judicial bias and prejudice in *State v. Page*, 2006 SD 2, 709 NW2d 739. Citing *Page*, the State argues that List waived his claims of bias and prejudice by pleading guilty and by failing to seek a change of judge during the trial court proceedings. *Page* provided that entry of a guilty plea waived the "*statutory right*" to seek recusal of a judge. *See Page*, 2006 SD 2, ¶ 14, 709 NW2d at 750 (emphasis added)(citing State v. Burgers, 1999 SD 140, ¶¶ 11 – 13, 602 NW2d 277, 279 – 80). However, *Page* also cautioned that, although the opportunity to disqualify a judge is statutory, and not a constitutional right, it "'may be implicit in [the] right to a fair trial.'" *Id.*, 709 NW2d at 749 (quoting State v. Hoadley, 2002 SD 109, ¶ 32, 651 NW2d 249, 257). This recognition of a potential

due process concern was recently reaffirmed by the Supreme Court in reviewing a claim of judicial bias. In its analysis, the Court observed that, "[i]t is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" Caperton v. Massey Coal Co., Inc., __ US __, __, No. 08-22, 2009 WL 1576573, at *6 (June 8, 2009)(quoting In re Murchinson, 349 US 133, 136, 75 SCt 623, 625, 99 LEd 942 (1955)). [1]

[¶8.]       Presumably, in light of this constitutional concern in a capital case, we declined the State's invitation to invoke waiver in *Page*, and we reviewed the claim of judicial bias under the plain error doctrine. We did, however, caution that: "Given the level of deference ordinarily afforded a circuit judge's decision to sit on a case, it would be rare for this Court to review such a decision under the rubric of plain error." *Page*, 2006 SD 2, ¶ 15, 709 NW2d at 750. Nevertheless, considering the fact that List's claimed ground for disqualification did not arise until after the time for filing an affidavit of statutory disqualification had expired, and considering the fact that List is raising a due process issue, we elect to review the issue for plain error.

[¶9.]       We did not find plain error in *Page* because we found no error in the circuit court's decision to sentence the defendant. *Id*. ¶ 16. In our analysis, we applied the following standards for identifying judicial bias or prejudice:

> "The decision to preside over a case lies within the sound discretion of the trial judge." As we have consistently stated, this Court presumes a judge was impartial absent a specific and substantial showing to the contrary. The

---

1.    At the same time, the Court "recognized, however, [that] 'most matters relating to judicial disqualification [do] not rise to a constitutional level.'" *Caperton*, __ US at __, 2009 WL 1576573, at *6 (quoting FTC v. Cement Institute, 333 US 683, 702, 68 SCt 793, 92 LEd 1010 (1948).

Code of Judicial Conduct directs a judge to disqualify himself or herself where "the judge's impartiality might reasonably be questioned" due to his or her "personal bias or prejudice concerning a party . . . ." In regard to judicial bias, we have recognized that:

> Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Hoadley*, 2002 SD 109, ¶ 32, 651 NW2d at 257 (quoting Von Kahl v. United States, 242 F3d 783, 793 (8thCir 2001)(quoting Liteky v. United States, 510 US 540, 114 SCt 1147, 127 LEd2d 474 (1994))). Similarly, this Court defined prejudice in *Hoadley* as:

> The attitude of personal enmity towards the party or in favor of the adverse party to the other party's detriment. It is not the mere possession of views regarding the law or the conduct of a party. Prejudice is in the personal sense rather than in the judicial sense and refers to a mental attitude or a disposition of the judge towards a party. In order for the alleged bias and prejudice to be disqualifying, it must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case.

*Id.* ¶ 33, 651 NW2d at 258 (citing In re C.N.H., 998 SW2d 553, 560 (MoCtApp 1999)).

*Page*, 2006 SD 2, ¶ 16, 709 NW2d at 750 – 51 (some citations omitted).

[¶10.] As in *Page*, the trial court's decision to preside over List's case was within its sound discretion. This Court must presume that the trial court was impartial absent a specific and substantial showing to the contrary. List has made

no such showing.  The comments of the trial court at sentencing reflect knowledge gained and opinions formed from facts introduced or disclosed in the presentence investigation in the proceedings against List or in the prior proceedings against Auch.  Under *Page*, those facts and opinions do not constitute a basis for finding bias or partiality.  *See id.*  List has also made no showing of deep-seated favoritism or antagonism by the trial court that made fair judgment impossible.  Certainly there has been no showing of "personal enmity" toward List which would have required evidence of a personal and deep seated hatred.  *See* The American Heritage College Dictionary 457 (3rd ed 1997)(defining "enmity" as "[d]eep-seated, often mutual, hatred.").  In this vein, we note that the court's strongest comment was not directed toward List personally, but was a general expression of abhorrence regarding taking advantage of "the disadvantaged."  This was nothing more than a reflection of the values of our society.  Further, the court's comments failed to disclose personal favoritism for Auch.  Instead, they expressed disappointment with the lack of progress in her recovery efforts as learned by the court in the course of its official duties. These comments are no different than those expressed every day by sentencing judges who are considering the impact of criminal conduct on the victims of crime.

[¶11.]        List *has* shown that the trial court possessed views regarding the law and List's conduct that led to the criminal proceedings against him and the prior proceedings against Auch.  However, "mere possession of views regarding the law or *the conduct* of a party" does not constitute disqualifying prejudice.  *Page*, 2006 SD 2, ¶ 16, 709 NW2d at 751 (emphasis added) (quoting *Hoadley*, 2002 SD 109, ¶ 33, 651

NW2d at 258). Here, List has failed to show any examples of bias or prejudice in the personal sense rather than the judicial sense or that the trial court had a particular mental attitude or disposition toward him. It is also notable that List has made no showing of trial court bias or prejudice stemming from extrajudicial sources.

[¶12.] List, however, contends that it was improper for the trial court to rely on knowledge acquired during the prior criminal proceedings against Auch . This contention was rejected by the Supreme Court in *Liteky*, 510 US 540, 114 SCt 1147, 127 LEd2d 474.[2] In *Liteky*, defendants charged with willful destruction of government property in connection with a protest moved to disqualify the district judge based upon events that occurred in an earlier case against one of the defendants before the same judge.[3] The judge denied the motion to disqualify on the basis that matters arising from judicial proceedings (such as the prior case) were not a proper basis for recusal. The defendants were convicted and appealed, challenging the denial of the motion to recuse. Their convictions were affirmed by the Court of Appeals and certiorari was granted to consider recusal under the "extrajudicial source doctrine."

---

2. *Liteky* was decided under a federal statute that required disqualification for the same ground List asserts here*; i.e.,* when "the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party . . .." *Liteky*, 510 US at 544, 114 SCt at 1152 (citing 28 USC § 144).

3. The earlier case also arose out of a protest and the trial took place approximately eight years before the trial in *Liteky*. *Liteky,* 510 US at 542, 114 SCt at 1150-51.

[¶13.]     The extrajudicial source doctrine provides that, to be disqualifying, trial court bias and prejudice must arise from "an extrajudicial source." *Liteky*, 510 US at 544 – 545; 114 SCt at 1152.  The Court clarified in *Liteky* that, although an "extrajudicial source" is a "factor" to consider in identifying disqualifying bias or prejudice, it is not always determinative (though it often is).  *See Liteky*, 510 US at 554 – 55, 114 SCt at 1157.  More pertinent to List's case, the Court explained that:

> [N]ot subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings.  It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

*Liteky*, 510 US at 551, 114 SCt at 1155.  The Court elaborated:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, *or of prior proceedings*, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Liteky*, 510 US at 555, 114 SCt at 1157 (emphasis added).

[¶14.]     These passages from *Liteky* make clear that opinions held or formed by a judge in a case that result from something the judge learned in prior judicial proceedings do not alone establish judicial bias or prejudice.  *Liteky* was followed by this Court in *Hoadley*, 2002 SD 109, ¶ 33, 651 NW2d at 257 – 58 and later in *Page*, 2006 SD 2, ¶ 16, 709 NW2d 739 at 751.  Both *Hoadley* and *Page* specifically quoted *Liteky* in stating that, "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of . . . prior proceedings, do not

-8-

constitute a basis for a bias or partiality motion[.]" *Page*, 2006 SD 2, ¶ 16, 709 NW2d at 751 (quoting *Hoadley*, 2002 SD 109, ¶ 32, 651 NW2d at 257).

[¶15.]     The facts and procedural scenario in *Page* also fail to support List's argument that bias and prejudice resulted from the trial court's experience in the prior case involving Auch. Page and two codefendants committed a murder. Although the three codefendants were separately prosecuted, the same circuit court judge presided over all three cases. One codefendant was tried by a jury and sentenced to life in prison and another codefendant pleaded guilty and was sentenced to death. Page also pleaded guilty and was sentenced to death. On appeal, he argued that the circuit court should have recused itself from sentencing him after imposing the death penalty on his codefendant because the judge developed empathy and sympathy for the victim through its sentencing of the codefendant. *Page*, 2006 SD 2, ¶ 13, 709 NW2d at 749. Page asserted that these feelings compromised the judge's ability to sentence him in an objective and neutral manner. *Id*. This is very similar to the argument List presents here. However, this Court rejected the argument in *Page*, reasoning:

> As grounds for disqualification, Page contends the circuit judge exhibited empathy and/or sympathy for the victim and did not sufficiently consider mitigation evidence. These arguments, however, do not establish a deep-seated antagonism against Page by the circuit judge or suggest Page was prejudiced from an extrajudicial source. Absent such a showing that a fair judgment was impossible, it was not error for the circuit judge to sentence Page after sentencing his codefendant Piper, and therefore, Page has failed to show plain error.

*Page*, 2006 SD 2, ¶ 17, 709 NW2d at 751. List has similarly failed to show that a fair judgment was impossible.

[¶16.] Based upon the foregoing, we hold that List has failed to establish trial court bias or prejudice in sentencing constituting a denial of due process of law. The information at issue was obtained in the course of a prior judicial proceeding and from the presentence investigation in this proceeding, which gave List the opportunity to respond. Although we have some concern with the court's expression of "abhorrence," we note that it was an isolated comment and we reiterate that it was not addressed to List personally, but was a general reference to those taking advantage of the disadvantaged. Based upon our review of the entire record, we do not believe that the comments by the court during sentencing reflected such a deep-seated antagonism against List as to make a fair judgment impossible. *Cf*. Sentis Group, Inc. v. Shell Oil Company, 559 F3d 888, 904 – 05 (8thCir 2009)(finding an appearance of trial court bias or prejudice making a fair judgment impossible where the court directed profanities at the plaintiff or the plaintiff's' counsel over fifteen times in the course of numerous conferences and hearings, denied the plaintiffs a meaningful opportunity to respond during a sanctions hearing, misconstrued its own discovery orders and cut off the plaintiffs' attempts to explain them). Rather we hold that the court's comments are of the type: "Not establishing bias or partiality [but constituting] expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as . . . judges, sometimes display." *Liteky*, 510 US at 555 – 56, 114 SCt at 1157. After all:

> The Judge who presides at a trial may, upon completion
> of the evidence, be exceedingly ill disposed towards the
> defendant, who has been shown to be a thoroughly
> reprehensible person. But the judge is not thereby

recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

*Id.* at 550 – 51, 114 SCt at 1155.

[¶17.]     Affirmed.

[¶18.]     GILBERTSON, Chief Justice, KONENKAMP, ZINTER,

MEIERHENRY, Justices, and SABERS, Retired Justice, participating.