#29865, #29870, #29871-a-SRJ
**2022 S.D. 77**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JEFFREY K. POWERS and
VICKY URBAN-REASONOVER,                    Petitioners and Appellants,

v.

TURNER COUNTY BOARD OF
ADJUSTMENT,                                Respondent and Appellee,

and

STEVE AND ETHAN SCHMEICHEL
and NORWAY PORK OP, LLC,                   Intervenors and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
TURNER COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHRIS S. GILES
Judge

\* \* \* \*

MITCHELL A. PETERSON
MICHAEL L. SNYDER of
Davenport, Evans, Hurwitz
   & Smith, LLP
Sioux Falls, South Dakota                  Attorneys for petitioners
                                           and appellants.


BRIAN J. DONAHOE of
Donna Law Firm, P.C.
Minneapolis, Minnesota                     Attorneys for intervenors and
                                           appellees.

\* \* \* \*

ARGUED
OCTOBER 4, 2022
OPINION FILED **12/21/2022**

\* \* \* \*

DOUGLAS M. DEIBERT of
Cadwell, Sanford, Deibert
    & Garry, LLP
Sioux Falls, South Dakota          Attorneys for respondent and
appellee.

#29865, #29870, #29871

JENSEN, Chief Justice

[¶1.] The Turner County Board of Adjustment (Board) granted Steve and Ethan Schmeichel and Norway Pork Op, LLC (Intervenors) a conditional use permit (CUP) for a large concentrated animal feed operation (CAFO). Nearby landowners Jeffrey K. Powers and Vicky Urban-Reasonover (Petitioners) petitioned the circuit court pursuant to SDCL 11-2-61 for a writ of certiorari challenging the legality of the CUP. Over the objections of the Board and Intervenors, the circuit court determined Petitioners had standing to challenge the conditional use permit but denied the writ of certiorari. Petitioners appeal the circuit court's denial of the writ of certiorari. By notice of review, the Board and Intervenors appeal the issues of standing and the circuit court's refusal to impose attorney fees on Petitioners under SDCL 11-2-65. We affirm.

## Facts and Procedural History

[¶2.] The Schmeichels initially sought a CUP in 2018 for a large CAFO that would house 7,400 head of swine, consisting of 5,400 sows and 2,000 hogs over 55 pounds. The Board voted to approve a CUP for the operation (2018 Permit). Petitioners filed a petition for a writ of certiorari with the circuit court challenging the Board's approval of the 2018 Permit. The circuit court dismissed that petition on summary judgment, determining that Petitioners lacked standing to challenge the CUP. In *Powers v. Turner County Board of Adjustment* (*Powers I*), 2020 S.D. 60, 951 N.W.2d 284, this Court reversed and remanded, holding that Petitioners had presented sufficient evidence to generate a question of fact whether they were aggrieved parties.

-1-

[¶3.]        Before that action was resolved, Intervenors submitted the CUP application at issue in this case for the same CAFO (2020 Permit).[1]  Prior to the hearing on the 2020 Permit, Petitioners submitted reports from Mr. Steve Shaykett, a real estate appraiser, and Mr. Anton Jitnikovitch, an odor modeling expert with a company called Scentroid.  Intervenors' odor expert, Dr. Richard Nicolai, testified at the hearing.  Board members Mick Miller, Anthony Champa, Richard Vasgaard, and Dean Austin granted the 2020 Permit by a unanimous vote.  Steve Schmeichel was a member of the Board at the time but recused himself and did not participate as a Board member at the hearing because of his interest in the CAFO.

[¶4.]        Petitioners petitioned for a writ of certiorari with the circuit court challenging the Board's approval of the 2020 Permit.  Intervenors were permitted to intervene.  The parties then stipulated to the entry of a final judgment on the pending certiorari action challenging the 2018 Permit, determining that "Schmeichels shall not use the 2018 Permit" and dismissing the action as moot.[2]

[¶5.]        The circuit court held a bench trial on the petition for writ of certiorari. Shaykett, Petitioners, the four members of the Board who voted to approve the 2020

---

1.    The parties agree that the 2020 application was identical to the 2018 application except that Norway Pork Op, LLC, which the Schmeichels had formed to operate the CAFO, was an additional applicant for the 2020 permit.

2.    At the Board hearing, Board members questioned the effect of granting the 2020 Permit after the 2018 permit was already approved.  Intervenors' counsel explained their effort to comply with the Ordinance, which required an amended or new CUP application when ownership changed or if a year had passed since approval.  Petitioners' counsel expressed concerns that by approving the 2020 Permit the Board had authorized twice as large a CAFO as intended.  In any event, the parties' stipulated judgment resolved any concerns about the impact of the 2018 Permit.

Permit, and then-Turner County Zoning Administrator Faye Dubbelde testified. The court also admitted a recording of a deposition of Dr. Ardevan Bakhtari, who is the President and CEO of Scentroid and had reviewed and approved Mr. Jitnikovitch's report. The court found that Petitioners were aggrieved persons with standing to challenge the 2020 Permit but denied the petition for writ of certiorari on the merits, determining that the Board actions in approving the CUP were legal. Following the denial of the writ, the Board and Intervenors filed motions requesting the court to assess attorney fees against the Petitioners pursuant to SDCL 11-2-65. The circuit court declined to award attorney fees.

[¶6.]     Petitioners raise two issues on appeal:

1.    Whether Petitioners' procedural due process rights were violated by the Board's actions.

2.    Whether the Board improperly granted the 2020 Permit by failing to adhere to its Ordinance.

Intervenors and the Board seek review of two issues:

1.    Whether Petitioners have standing to challenge the Board's actions.

2.    Whether the circuit court abused its discretion by declining to award attorney fees under SDCL 11-2-65.

**Analysis and Decision**

*1.    Petitioners' standing.*

[¶7.]     Although Intervenors and the Board raise the issue of standing by notice of review, we address this issue first because "litigant[s] must have standing in order to bring a claim in court." *Powers I*, 2020 S.D. 60, ¶ 13, 951 N.W.2d at 289–90 (quoting *Lippold v. Meade Cnty. Bd. of Comm'rs*, 2018 S.D. 7, ¶ 18, 906 N.W.2d

-3-

917, 922). And "[a]though standing is distinct from subject-matter jurisdiction, a circuit court may not exercise its subject-matter jurisdiction unless the parties have standing." *Id.* (alteration in original) (quoting *Lippold*, 2018 S.D. 7, ¶ 18, 906 N.W.2d at 922). "Whether a party has standing to maintain an action is a question of law reviewable by this Court de novo." *Pickerel Lake Outlet Ass'n v. Day Cnty.*, 2020 S.D. 72, ¶ 7, 953 N.W.2d 82, 86 (quoting *Howlett v. Stellingwerf*, 2018 S.D. 19, ¶ 11, 908 N.W.2d 775, 779).

[¶8.]     Intervenors argue Petitioners are not aggrieved parties under SDCL 11-2-1.1, which took effect in 2020. Intervenors claim that this statute codifies heightened requirements to establish that a person is "aggrieved" by a decision of a county board of adjustment and the circuit court erred in failing to dismiss the petition for lack of standing. As a part of their standing argument, Intervenors also contend that the circuit court erred in allowing Shaykett's opinion into evidence. Petitioners respond that the circuit court correctly determined they have standing to challenge the 2020 Permit by writ of certiorari as their properties are uniquely impacted because of their close proximity to the proposed CAFO.

[¶9.]     While the Intervenors did not raise the evidentiary issue in their notice of review, the circuit court was within its discretion in admitting and considering Shaykett's opinion for the issue of standing. We review evidentiary rulings for abuse of discretion. *Miles v. Spink Cnty. Bd. of Adjustment*, 2022 S.D. 15, ¶ 24, 972 N.W.2d 136, 145 (citing *Grant Cnty. Concerned Citizens v. Grant Cnty. Bd. of Adjustment*, 2015 S.D. 54, ¶ 40, 866 N.W.2d 149, 163). For expert testimony, this Court adopted the test from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.

579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). *In re Est. of Dokken*, 2000 S.D. 9, ¶ 40, 604 N.W.2d 487, 498 (explaining that the Court in *State v. Hofer*, 512 N.W.2d 482, 484 (S.D. 1994) adopted the *Daubert* test). *Daubert* eliminated the requirement of "general acceptance in the scientific community." *Id.* (citing *State v. Moeller*, 1996 S.D. 60, ¶ 52, 548 N.W.2d 465, 479). Thus, the circuit court "simply [had to] determine 'that [the] expert's testimony both rest[ed] on a reliable foundation and [was] relevant to the task at hand.'" *Id.* (quoting *Moeller*, 1996 S.D. 60, ¶ 52, 548 N.W.2d at 479). "The basis of an expert's opinion is generally a matter going to the weight of the testimony rather than the admissibility." *Id.* ¶ 41, 604 N.W.2d at 499 (quoting *State v. Spiry*, 1996 S.D. 14, ¶ 16, 543 N.W.2d 260, 264).

[¶10.] Expert opinions concerning valuation questions are not formulaic, and "[a]dmission of comparable sales rests largely within the discretion of the trial court . . . ." *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 104 (S.D. 1994); *see* SDCL 19-19-702. In *First Western Bank Wall v. Olsen*, we held that one party "failed to show that the circuit court abused its discretion" by accepting the other party's different valuation opinion. *Olsen*, 2001 S.D. 16, ¶ 10, 621 N.W.2d 611, 616. The other party's valuation opinion was not "unreliable or irrelevant" just because the experts varied in the methods they emphasized. *Id.* Here, too, the circuit court admitted Shaykett's opinion, determining that its concerns with the speculative nature of the opinion regarding value went to its weight, not its admissibility.

[¶11.] Having addressed the admissibility of Petitioners' expert testimony on the question of standing, we now return to whether the evidence supports the circuit court's determination that Petitioners are aggrieved persons. The statute

authorizing a writ of certiorari challenge to a county board of adjustment decision provides in relevant part that "[a]ny person . . . aggrieved by any decision of the board of adjustment may present to a court of record a petition duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality." SDCL 11-2-61. SDCL 11-2-1.1 defines a person aggrieved as:

> any person directly interested in the outcome of and aggrieved by a decision or action or failure to act pursuant to this chapter who:
> > (1) Establishes that the person suffered an injury, an invasion of a legally protected interest that is both concrete and particularized, and actual or imminent, not conjectural or hypothetical;
> > (2) Shows that a causal connection exists between the person's injury and the conduct of which the person complains. The causal connection is satisfied if the injury is fairly traceable to the challenged action, and not the result of the independent action of any third party not before the court;
> > (3) Shows it is likely, and not merely speculative, that the injury will be redressed by a favorable decision, and;
> > (4) Shows that the injury is unique or different from those injuries suffered by the public in general.

[¶12.]     Prior to 2020, the Legislature had not defined "aggrieved persons" for the purposes of SDCL chapter 11-2. The Board and Intervenors argue that the adoption of SDCL 11-2-1.1 is significant because it increases the showing for establishing aggrieved party status.

[¶13.]     Contrary to the argument by the Board and Intervenors, SDCL 11-2-1.1 functions to memorialize—rather than to modify—the existing law applicable to establish "aggrieved person" status under SDCL chapter 11-2. This Court initially adopted an aggrieved person test, from which SDCL 11-2-1.1 takes its language, for actions by citizens against a public entity. *See Benson v. State*, 2006 S.D. 8, ¶ 22,

710 N.W.2d 131, 141 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)). We reaffirmed this standard in *Cable v. Union County Board of County Commissioners* for persons aggrieved by a decision of a county commission under SDCL 7-8-27. 2009 S.D. 59, ¶ 26, 769 N.W.2d 817, 827 (requiring a showing of injury, causation, redressability, and uniqueness and explaining that the requirement that Petitioners show injuries affect them individually and not merely as taxpayers in general dates back to the Dakota Territorial era). In *Powers I*, we applied this aggrieved person standard for a petitioner seeking a writ of certiorari under SDCL 11-2-61 for challenges to decisions of a county board of adjustment. 2020 S.D. 60, ¶ 18, 951 N.W.2d at 292 (adopting the test from *Cable* and reaffirming that a petitioner must prove "a unique and personal injury as opposed to *a general taxpayer injury* in order to proceed").

[¶14.] Nonetheless, the Board and Intervenors argue that Petitioners are not persons aggrieved under SDCL 11-2-1.1 and highlight the circuit court's finding that "[i]n spite of [real estate agent] Mr. Shaykett's experience and knowledge as an appraiser, offering an opinion concerning the diminution in and value to a property close to a proposed CAFO facility is *very speculative*." (Emphasis added.) They cite to the language of SDCL 11-2-1.1 requiring a showing that the injury is "actual or imminent, not conjectural or hypothetical" and showing that "it is likely, and not merely speculative, that the injury will be redressed by a favorable decision[.]"

[¶15.] The Board and Intervenors would have Petitioners prove their case on the merits in order to be aggrieved parties. However, establishing standing does

not require Petitioners to prove they will prevail on the merits. *See Cable*, 2009 S.D. 59, ¶¶ 22–24, 769 N.W.2d at 826–27. "[O]ne must not 'confus[e] weakness on the merits with absence of . . . standing.'" *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800, 135 S. Ct. 2652, 2663, 192 L. Ed. 2d 704 (2015) (second alteration in original) (quoting *Davis v. United States*, 564 U.S. 229, 249 n.10, 131 S. Ct. 2419, 2434 n.10, 180 L. Ed. 2d 285 (2011); *see also Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975) (explaining that standing "often turns on the nature and source of the claim asserted[,]" but "in no way depends on the merits of the [claim]").

[¶16.]    We turn then to the four-part test under SDCL 11-2-1.1 for establishing aggrieved person status to determine standing in this case. The first prong requires a concrete and particularized injury. The circuit court received expert testimony from Shaykett that because of the proximity of the proposed CAFO to Urban-Reasonover's home, her property would lose value. The circuit court found Shaykett's opinion of value to be "speculative" based on the lack of comparable sales and Shaykett's analogy to the effect of the odor from "open" sewer lagoons on real estate sales to be unpersuasive as to valuation, but specifically rejected the *Daubert* challenge to Shaykett's valuation testimony. The admission of this opinion testimony provided evidence to support Petitioners' claim that their property values would be diminished by the construction of the CAFO near their properties. The court's findings acknowledged Shaykett's testimony "that the mere presence of a hog facility of this nature can impact the perception of a prospective buyer" and found it was "a legitimate concern." The court also considered Urban-

Reasonover's testimony of the impact of the CAFO on her property values and properly determined the Petitioners were competent to provide opinions of the impact the CAFO would have on their property values. Urban-Reasonover's testimony was further supported by the testimony of Dr. Bakhtari concerning the particular impact that odor would have on Petitioners because of the close proximity of their properties to the CAFO.

[¶17.]     Importantly, the court made no finding that Petitioners' claims of actual injury, for the purpose of standing, were speculative. Instead, the court determined that "Petitioners have met their burden as to standing," finding that "these [P]etitioners have a personal, distinct, and potential injury that could come about because of this proposed facility." We agree and conclude that Petitioners presented sufficient evidence to show a concrete and particularized injury from the construction of the proposed CAFO in close proximity to their land.

[¶18.]     The Board and Intervenors argue that Petitioners could not show an actual injury because of the Right to Farm Covenant (Covenant) that runs with the land in the A-1 Agricultural District of Turner County. It provides notice that owners of the affected land "may be subject to inconvenience . . . includ[ing] . . . odors . . . during any twenty-four hour period." It continues "you should be prepared to accept such inconveniences . . . . You are also notified that there is the potential for agricultural or agricultural processing operations to expand." However, the Covenant applies only to new construction, and the Petitioners' dwellings preexisted the 2018 and 2020 Permits. The Covenant does not diminish their claim of actual injury for the purpose of establishing aggrieved party status.

[¶19.]     Second, as to causation, Dr. Bakhtari testified in his deposition that AERMOD, a model using data on the topography and weather of the area to predict the dispersal of the odor produced by the proposed CAFO, indicated the odor would cause a nuisance to Petitioners' properties on 72.4% of days.  While the circuit court observed that it appeared the Board found testimony from Intervenors' odor expert, Dr. Nicolai, more persuasive, the court noted that "Dr. Bakhtari is a qualified and experienced expert in the field of odor detection and analysis" and that his analysis was "impressive."  This evidence was sufficient to support Petitioners' claims that a causal relationship existed between odor from the CAFO and Petitioners' injury in the form of reduced property values due to the odor nuisance.

[¶20.]     Third, the claimed injuries would no doubt be redressed by a favorable decision on writ of certiorari overturning the 2020 Permit granted to Intervenors.

[¶21.]     Finally, as we noted in *Powers I*, Urban-Reasonover provided evidence that Petitioners' injuries were different from those the general public might suffer by testifying "that '[o]ther taxpayers in Turner County who live or own property several miles from the proposed site will *not* experience any noxious odors or noise from' the CAFO."  2020 S.D. 60, ¶ 20, 951 N.W.2d at 293 (alteration in original).  At trial, Dr. Bakhtari presented testimony concerning the particular injuries Petitioners would sustain from odor emanating from the CAFO near their properties.  Therefore, Petitioners presented sufficient evidence to establish standing to bring this proceeding under SDCL 11-2-65.

### 2. *Petitioners' due process rights.*

[¶22.]     Petitioners argue their procedural due process rights were violated by an unacceptable risk of actual bias. Specifically, they assert that the Board was predisposed to grant the 2020 Permit after the Board had previously approved the 2018 Permit. Because the plans for the 2020 Permit were the same as those in the 2018 Permit being litigated, Petitioners reason that the Board could not deny the 2020 Permit without implicitly admitting it was wrong in 2018. Petitioners next assert the Board improperly considered financial incentives tied to granting the permit, namely that Intervenors might have been eligible for rebates through the South Dakota Jobs Grant and Reinvestment Repayment Program, and that such incentives were not among the exclusive criteria the Board was required to consider. *See* Turner County, S.D., Ordinance §§ 13.09(E)(1)-(9) (2008) (including the proposed CAFO's plan for setback from homes, odor control, and any past permit violations by the operator). Finally, Petitioners argue that although board member Schmeichel did not vote, his appearance as an interested person at the hearing could have influenced or appeared to influence the other board members.

[¶23.]     Petitioners rely on *Armstrong v. Turner County Board of Adjustment*, 2009 S.D. 81, 772 N.W.2d 643, in support of their due process claims. *Armstrong*, however, has been limited by our holdings in *Holborn v. Deuel County Board of Adjustment*, 2021 S.D. 6, 955 N.W.2d 363, and *Miles v. Spink County Board of Adjustment*, 2022 S.D. 15, 972 N.W.2d 136. In both *Miles* and *Holborn*, we applied the due process standard to claims of bias against a board of adjustment. In *Miles*,

we explained the significance of *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 129

S. Ct. 2252, 173 L. Ed. 2d 1208 (2009), and stated the standard as follows:

> [T]he probability of bias is at an unconstitutional level when there is "a serious risk of actual bias" that is "based on objective and reasonable perceptions[.]" *Caperton*, 556 U.S. at 884, 129 S. Ct. at 2263. This standard requires an objective inquiry into whether the circumstances "offer[] a possible temptation to the average . . . judge to . . . lead him [or her] not to hold the balance nice, clear and true." *Id.*, 556 U.S. at 878, 129 S. Ct. at 2260 (citation omitted). As we stated in *Holborn*, "*Caperton* expanded the reach of the Due Process Clause for fairness in judicial proceedings" but "reaffirmed that the standard for disqualification of a judicial officer is extremely high and should only be applied in 'extraordinary situation[s] where the Constitution requires recusal.'" *Holborn*, 2021 S.D. 6, ¶ 27, 955 N.W.2d at 375–76 (quoting *Caperton*, 556 U.S. at 887, 129 S. Ct. at 2265).

2022 S.D. 15, ¶ 36, 972 N.W.2d at 148–49 (second, fourth, and fifth alterations in

original).

[¶24.]     Petitioners' assertion that the Board violated their due process rights

by considering essentially the same application in 2020 that it considered in 2018 is

not supported by the standard set forth in *Miles* and *Holborn*. Petitioners have not

shown that the Board failed to consider the evidence or arguments presented by

Petitioners.[3] The Board heard the concerns personally shared by Petitioners at the

---

3.     Petitioners cite the Board members' admissions during depositions that they did not read the expert reports that were provided to them in advance of the hearing. However, at the hearing, Petitioners' attorney summarized the issues presented by their experts. The Board members testified that they were aware of Petitioners' odor concerns and the CAFO's impact on Petitioners, heard these concerns at the hearing, and did consider these concerns before granting the CUP. In *Adolph v. Grant County Board of Adjustment*, "[w]e question[ed] the propriety of deposing the decision maker in a quasi-judicial proceeding. However, as the issue was not raised in [that] appeal, we [left] its resolution for another day." 2017 S.D. 5, ¶ 14 n.3, 891

(continued . . .)

hearing as well as the evidence and arguments presented by counsel for both parties before issuing a decision on the merits of the 2020 Permit. Petitioners ask the Court to simply assume that the Board was biased because it had already entered a favorable decision on the 2018 Permit application. Taken to its logical conclusion, Petitioners' argument that the Board was biased after having already approved essentially the same prior CUP application would disqualify a quasi-judicial decisionmaker from ever rehearing a matter previously considered and determined, even in the absence of a showing of actual or "serious risk" of actual bias.

[¶25.] Petitioners' claims are also contrary to the extrajudicial source doctrine recognized by this Court. "The extrajudicial source doctrine provides that, to be disqualifying, trial court bias and prejudice must arise from 'an extrajudicial source.'" *State v. List*, 2009 S.D. 73, ¶ 13, 771 N.W.2d 644, 648 (quoting *Liteky v. United States*, 510 U.S. 540, 544–45, 114 S. Ct. 1147, 1152, 127 L. Ed. 2d 474 (1994)). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, *or of prior proceedings*, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* (alteration in original) (quoting *Liteky*, 510 U.S. at 555, 114 S. Ct. at 1157). The

---

(. . . continued)

N.W.2d 377, 382 n.3. Here, likewise, we note our concern with this practice but decline to resolve the issue. *See also Miles*, 2022 S.D. 15, ¶ 24 n.12, 972 N.W.2d at 145 n.12 (noting that "[w]hile deposing quasi-judicial board members about their decision-making process is generally disfavored," the depositions at issue "focused primarily on the Board's alleged biases or conflicts of interest").

"passages from *Liteky* make clear that opinions held or formed by a judge in a case that result from something the judge learned in prior judicial proceedings do not alone establish judicial bias or prejudice." *Id.* ¶ 14, 771 N.W.2d at 648.

[¶26.] Finally, the claims that the Board improperly considered financial incentives tied to granting the 2020 Permit and the presence of Schmeichel at the hearing before the Board also fail to establish actual bias or unacceptable risk of actual bias by the Board. The Board's awareness and mention of the county financial incentives associated with the 2020 Permit during the hearing, without more, do not support a claim for improper bias under the Due Process Clause. Likewise, Schmeichel's presence and membership on the Board do not support Petitioners' due process claims. Schmeichel did not vote, and there is no showing that he attempted to improperly influence the Board's decision at the hearing. Schmeichel's personal appearance at his own CUP application hearing is insufficient. *See Miles*, 2022 S.D. 15, ¶ 42, 972 N.W.2d at 150 (noting that relationships between board members and community members are inevitable in rural populations and not sufficient on their own to establish actual bias or serious risk thereof).

### 3. *Grant of 2020 Permit.*

[¶27.] "The review upon writ of certiorari cannot be extended further than to determine whether the inferior court, tribunal, board, or officer, has regularly pursued the authority of such court, tribunal, board, or officer." SDCL 21-31-8. "[T]he statute 'limit[s] certiorari review "to whether the board of adjustment had jurisdiction over the matter and whether it pursued in a regular manner the

authority conferred upon it.'"" *Ehlebracht v. Deuel Cnty. Plan. Comm'n*, 2022 S.D. 18, ¶ 12, 972 N.W.2d 464, 470 (second alteration in original) (quoting *Dunham v. Lake Cnty. Comm'n*, 2020 S.D. 23, ¶ 10, 943 N.W.2d 330, 333). "The test of jurisdiction is whether there was power to enter upon the inquiry[.]" *Id.* (quoting *Lake Hendricks Imp. Ass'n v. Brookings Cnty. Plan. & Zoning Comm'n*, 2016 S.D. 48, ¶ 26, 882 N.W.2d 307, 315). "With a writ of certiorari, we do not review whether the [board's] decision is right or wrong." *Id.* ¶ 13, 972 N.W.2d at 470 (alteration in original) (quoting *Grant Cnty. Concerned Citizens*, 2015 S.D. 54, ¶ 10, 866 N.W.2d at 154). "Courts must not review the merits of a petition or evidence for the purpose of determining the correctness of a finding, in the absence of a showing that the Board 'acted fraudulently or in arbitrary or willful disregard of undisputed and indisputable proof.'" *Id.* (quoting *Lamar Outdoor Advert. of S.D., Inc. v. City of Rapid City*, 2007 S.D. 35, ¶ 21, 731 N.W.2d 199, 205). "[W]e will sustain the lower tribunal's decision 'unless it did some act forbidden by law or neglected to do some act required by law.'" *Id.* (quoting *Dunham*, 2020 S.D. 23, ¶ 10, 943 N.W.2d at 333).

[¶28.] Petitioners argue the Board did not regularly pursue its authority consistent with the requirements of the County Zoning Ordinance. In their view, the proposed CAFO did not fit into any of the listed CAFO categories and needed to be considered on a case-by-case basis to determine the appropriate setback. Petitioners' argument is based on Turner County, S.D., Ordinance § 13.09(D) (2008), which allows case-by-case determinations when the animal types are not listed in the table.

[¶29.]     The precise approach to categorizing the CAFO and calculating the setback that Dubbelde employed and the Board adopted is unclear on the record. The CAFO included a mix of swine comprised of 2,000 finisher swine and 5,400 sows with piglets that were weaned and moved to another facility after approximately three weeks. By Petitioners' own admission, this sow farrow-to-wean operation did not clearly fall into any of the existing categories within § 13.09(D). Petitioners cite testimony by the Board members indicating that they were not aware they had to make case-by-case determinations consistent with this provision. Yet Petitioners fail to explain how the Board's actions were inconsistent with their discretion to make a case-by-case determination. The Petitioners have not shown how the Board failed to follow the Ordinance or that it did not regularly pursue its authority for considering the CUP.

[¶30.]     Petitioners also allege that the Board members acted arbitrarily by not verifying Dubbelde's calculations and by relying on her expertise in considering the Ordinance requirements. In Petitioners' view, the Board's reliance on Dubbelde to calculate the setback is similar to, and more egregious than, *Hines v. Board of Adjustment of City of Miller*, 2004 S.D. 13, 675 N.W.2d 231. In *Hines*, this Court determined that a county planning and zoning board improperly declined to grant a variance and "simply relinquished its decision to a vote of the neighbors." 2004 S.D. 13, ¶ 13, 675 N.W.2d at 234. Petitioners argue that the Board improperly delegated its authority to calculate the number of animal units and the appropriate setback to Dubbelde and "abdicated its responsibility" because "Dubbelde's calculation was not a mere exercise in arithmetic" but instead "a judgment call[.]"

[¶31.] Petitioners' reliance on *Hines* is misplaced. Unlike in *Hines*, the Petitioners have failed to show that the Board's decision rested on an improper basis, much less to the exclusion of relevant factors. In *Miles*, we clarified that the board in *Hines* "exceeded its authority by denying a variance based *solely* on the opinion of neighboring landowners. [W]e noted that the board, having *dismissed* the list of concerns raised by the neighbors as *irrelevant*, 'was left with *only* the opinion of a few neighbors . . . .'" 2022 S.D. 15, ¶ 53 n.20, 972 N.W.2d at 153 n.20 (final emphasis added) (citations omitted).

[¶32.] Here, the Board did not abdicate its decision-making authority. It was not improper for the Board to rely on staff support from Dubbelde to assist in calculating the required setback. Even though the unique features of the CAFO required Dubbelde to exercise some discretion in calculating the appropriate setback under the Ordinance, she did so with the clear understanding that the setback must comply with the Ordinance requirements. While Petitioners would calculate the required setback differently, Petitioners have failed to establish that calculations relied upon by the Board were in contravention of the applicable Ordinance provisions. Further, unlike in *Hines*, Dubbelde's calculations were not the sole ground for the decision to grant the CUP, and the Board did not base its decision on irrelevant concerns. Here, the Board considered a variety of pertinent information concerning the CAFO, including its impact on neighboring property owners. The Board's findings aligned more with the evidence presented by Intervenors, and Petitioners have not established that the Board acted arbitrarily or in "willful disregard of undisputed and indisputable proof." *See Ehlebracht*, 2022

S.D. 18, ¶ 12, 972 N.W.2d at 470.  Without evidence of illegal actions or failures to act, we uphold the Board's decision.

### 4.    *Attorney fees.*

[¶33.]    "In cases where attorney's fees are statutorily authorized, the trial court's ruling is reviewed under an abuse of discretion standard."  *Hoffman v. Olsen*, 2003 S.D. 26, ¶ 7, 658 N.W.2d 790, 792.

[¶34.]    The Board and Intervenors sought attorney fees under SDCL 11-2-65, which provides that "[t]he court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.  On motion, the court *may* award reasonable attorneys' fees and costs of the action in an action brought to the court under this chapter against any non-prevailing party relative to the petition for writ of certiorari."  (Emphasis added.)  They argue that the circuit court abused its discretion by declining to award attorney fees.  But when the Legislature uses the word "may," fee awards are discretionary.  *Ctr. of Life Church v. Nelson*, 2018 S.D. 42, ¶¶ 34, 38, 913 N.W.2d 105, 114, 115.  Circuit courts have discretion under such statutes not only in the amount of fees to award but in whether to award fees to the prevailing party at all.  *Id.* ¶ 40, 913 N.W.2d at 116.

[¶35.]    In its order, the circuit court reasoned that "the issues in this case were fairly debatable and non-frivolous" and that awarding attorney fees would not serve the purpose of the statute allowing them.  Nor did the circuit court find any "remedial or deterrent purpose" for awarding attorney fees.  The circuit court explained its decision to deny attorney fees to the Board and the Intervenors and

based its decision on relevant factors. *See id.* ¶ 41, 913 N.W.2d at 116.  Therefore, the court did not abuse its discretion by declining to award attorney fees.

[¶36.]     Intervenors also submitted a motion for appellate attorney fees under SDCL 15-26A-87.3 and 11-2-65.  We decline to award appellate attorney fees.

[¶37.]     We affirm.

[¶38.]     KERN, SALTER, DEVANEY, and MYREN, Justices, concur.